**Henry J.N. TAUB, Appellant,**

v.

**CITY OF DEER PARK, Appellee.**

**No. 14–90–00292–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 14, 1995.

**396**

Joe G. Roady, Houston, for appellant.

Marvin B. Peterson, Houston, P.B. Dover, Jr., Deer Park, Sheryl Sikes Roper, Houston, William A. Oson, Jr., Houston, for appellee.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION ON REMAND

MURPHY, Chief Justice.

This condemnation case comes to us on remand from the Texas Supreme Court and concerns the propriety of the trial court's refusal to find any damage to the remainder of the landowner's property. The City of Deer Park ("the City") filed two condemnation proceedings for street and drainage improvements, and appellant, Henry J.N. Taub ("Taub"), filed suit objecting to the City's refusal to rezone part of his property and challenging the constitutionality of the City's zoning ordinance as applied to his land. The three actions were consolidated and tried to the court. The trial court upheld the City's rezoning denial and the constitutionality of the zoning ordinance, and awarded Taub damages for the value of the land taken, but found no damage to the remainder of the property. *See* TEX.PROP.CODE ANN. § 21.042(c) (Vernon 1984) (requiring the effect of condemnation on the value of the owner's remaining property to be included in determining damages to the owner).

In our original opinion, we sustained the findings and conclusions of the trial court that the City's zoning ordinance was constitutional as applied to Taub's property and there was no damage to the remainder as a result of the drainage ditch taking. Relying on evidence indicating that the drainage ditch would aid the property's development by upgrading it from a 100–year flood plain to a 500–year flood plain, we concluded that "there is evidence to support the trial court's implied finding that any damage to the remainder of Taub's property may be offset by the special benefit it received from the installation of the ditch." *Taub v. City of Deer Park*, 885 S.W.2d 161, 164 (Tex.App.—Houston [14th Dist.] 1991). We remanded, however, for correction of errors in the judgment. *Id.* at 165.

The Texas Supreme Court affirmed our judgment as to the zoning issues, but reversed in part and remanded for further consideration of the issue of remainder damages. *Taub v. City of Deer Park*, 882 S.W.2d 824, 828 (Tex.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 904 (1995). The supreme court held that the benefit conferred by the construction of the drainage ditch was not peculiar to Taub's property, and, therefore, any benefit from the installation of the ditch was general to the community and may not be used to offset any damages to Taub's property. *Id. See also* TEX.PROP.CODE ANN. § 21.042(d) (Vernon 1984) (permitting consideration of special injuries or benefits, but not those experienced in common with the general community, in assessing condemnation damages).

The northern portion of Taub's unimproved tract is zoned industrial, and the southern portion is zoned single-family residential. The drainage improvements consist of ditch structures running along the southeastern boundary of the tract, extending across the tract to the western edge, dividing the industrial and single-family residential portions of the tract, and then continuing along the northwestern boundary of the tract. It is Taub's position that the drainage ditch damaged the remainder of his property by deprivation of access between the residential and industrial tracts.[1] He asserts that these damages are equivalent to the cost of constructing a bridge over the ditch, estimated at trial to be $105,000.[2]

■ The supreme court rejected Taub's contention that the cost of building a bridge to unify the property represents the difference in the value of the remainder before and after the taking. *Taub*, 882 S.W.2d at 827. The proper measure of damages for taking only part of a tract, as here, is the market value of the land actually appropriated and the difference, if any, in the market value of the remainder immediately before and immediately after the taking. *Id.* (citing *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 197

(Tex. Comm'n App.1936, judgm't adopted)). Additionally, we should consider all the facts and circumstances, including any possible items of special damages, affecting the fair market value of the remainder in determining severance damages. *Carpenter*, 89 S.W.2d at 197–98.

■ Taub raised points of error on appeal attacking the legal and factual sufficiency of the evidence supporting the trial court's finding that there was no damage to the remainder of his property. Findings of fact in a case tried to the court are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ).

■ It was Taub's burden of proof to establish the market value of the property and his damages. *Religious of the Sacred Heart of Texas v. City of Houston*, 836 S.W.2d 606, 613 (Tex.1992). When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). When reviewing a "matter of law" point, we apply a two-prong test: (1) we examine the record for any evidence that supports the finding, ignoring all evidence to the contrary; (2) if there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* If the contrary proposition is established conclusively, we sustain the point. *Meyerland Community Improvement Ass'n v. Temple*, 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ When reviewing a challenge to the factual sufficiency of the evidence, we must examine all of the evidence in the record, both supporting and contrary to the judg-

---

1. Taub agrees that the street taking caused no damage to the remainder.

2. Taub has abandoned his previous assertion, both at trial and in the original appeal, that two bridges were required, which would have doubled his claimed damages.

ment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). After considering and weighing all the evidence, we will sustain the challenge only if the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

■ In this case, evidence supporting the trial court's finding of no remainder damages is found in the testimony of the City's appraiser, Donald F. Ford. While Ford did not supply a written report for admission into evidence at trial, he testified that he had reviewed the report from Taub's appraiser and had used basically the same comparable sales. Apart from two or three points, he was in general agreement with Taub's appraiser, including his opinion as to the value of the remainder after the takings. Ford testified that the value of the property before the takings was between $5,500 per acre and $6,000 per acre, and that the value of the remainder after the takings was $7,000 per acre. Thus, in Ford's opinion, there was no damage to the remainder.

In Ford's opinion, the separation of the industrial-zoned tract and the residential-zoned tract by the drainage ditch did not adversely impact access to either tract. Evidence in the record established that the residential tract retained access to 13th Street and the industrial tract retained access to Highway 225. The City's appraiser was of the opinion that direct access between the industrial tract and the single-family residential tract would be hazardous due to heavy truck traffic transporting petrochemicals on Highway 225. In his opinion, the drainage ditch serves as a natural barrier between the residential and industrial tracts.

Therefore, because there is some probative evidence in the record supporting the court's finding of no remainder damages, we must overrule Taub's challenge to the legal sufficiency of the evidence. Having found legally sufficient evidence, we now review the remaining evidence to determine if the trial court's finding of no remainder damages is against the great weight of the evidence in the record.

Our review of the remaining evidence reveals the following. Taub's appraiser, David L. Stirton, testified that, in his opinion, the value of the remainder immediately before the taking was $619,100, and the value immediately after the taking was $514,100.[3] He explained that the difference in value represented the cost of constructing a bridge, which he estimated to be $105,000, to permit a "continued flow between the two parcels." In his report, he valued the land before the taking at $7,000 per acre, and he valued the remainder immediately after the taking at $7,000 per acre. Stirton believed, however, that Taub was damaged because the ditch separated the industrial and residential tracts and precluded otherwise uninterrupted access. He testified that he treated the property as a unified tract in evaluating damage to the remainder. His opinion was that any less access than the owner had before the taking resulted in a diminution of his flexibility in developing the property. Thus, the damage, in his opinion, was the cost of constructing a bridge to restore access.

■ Taub's essential complaint is that access between the northern and southern parcels has been impaired. We recognize that impaired access is a compensable special damage. *State v. Heal*, 39 Tex.S.Ct.J. 72, 74, —— S.W.2d ——, —— 1995 WL 643204 (Nov. 2, 1995) (citing *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex.1993)). The seminal case on impaired access damages is *DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.1965). In *DuPuy*, the Texas Supreme Court determined that a landowner is entitled to compensation when a public improvement destroys all "reasonable access," thereby damaging the property. *Id.* at 109. The court later modified the rule to accommodate situations in which normal access was still reasonably available, but access for which the property was specifically intended was rendered unreasonably deficient. *Heal*, —— S.W.2d at ——. Under the modified test, a landowner can recover compensation whenever access is "materially

---

**3.** Stirton testified that he calculated the value of the remainder before the taking based on 88.44 acres at $7,000 per acre. He did not testify to a different value per acre after the taking, and instead based the diminished post-taking value on the cost of a bridge.

and substantially impaired." *City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969).

The impaired access issue in this case is somewhat similar to the situation in *Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111 (Tex.1965). In *Archenhold,* one means of access was completely impaired while another remained open. *Id.* at 114. The supreme court held that damages for *diminishment* of the means of access is not compensable provided reasonable access remains. *Id.*[4] Here, even though direct access between the northern and southern portions of Taub's property is blocked, the evidence established that both the residential and industrial tracts had access to public roads after the takings. Taub failed to provide sufficient evidence that he experienced "materially and substantially impaired" access to his property that would entitle him to additional compensation for severance of the property.

We conclude that the evidence contrary to the trial court's finding is not so overwhelming as to render the finding of no remainder damages manifestly unjust. First, the only evidence in the record supporting damage to the remainder is not based on fair market value, but instead is based on the cost of constructing a bridge, an improper measure of damages. Secondly, the City's appraiser

disagreed with Taub's appraiser as to whether Taub was damaged by the drainage ditch and whether a bridge was necessary or even desirable. Thus, the trial court was confronted with conflicting expert testimony, which it could properly resolve as the finder of fact. We may not substitute our opinion for that of the trier of fact where its finding is not against the great weight of the evidence. *Lofton v. Texas Brine Corp.,* 777 S.W.2d 384, 387 (Tex.1989). Finally, Taub failed to provide sufficient evidence of a material and substantial impairment of access to warrant compensation. We must, therefore, overrule Taub's challenge to the factual sufficiency of the evidence. We hold that the evidence is both legally and factually sufficient to support the trial court's finding of no remainder damages.

In conclusion, we affirm the trial court's judgment as to its finding of no remainder damages, but reverse in part and remand the cause for entry of a corrected judgment in accordance with our original opinion.

---

4. Even though *Archenhold* was decided before the test for impaired access was expanded to "material and substantial" impairment, the Texas Supreme Court expressed the opinion that the same outcome would have been reached had the more exact test been used. *Heal,* —— S.W.2d at ——.