**Dr. John P. JOHNSTON and John P. Johnston, Inc., Appellant,**

v.

**McKINNEY AMERICAN, INC., Appellee.**

No. 14–97–01207–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 10, 1999.

Rehearing Overruled Jan. 13, 2000.

Lionel M. Schooler, Houston, for appellants.

Meyer Jacobson, Houston, for appellees.

Panel consists of Justices YATES, MAURICE E. AMIDEI, and FOWLER.

## O P I N I O N

MAURICE E. AMIDEI, Justice.

Dr. John P. Johnston and John P. Johnston, Inc. (Johnston) appeal from a money judgment entered against them in a suit by appellee (McKinney) on an equipment lease. McKinney sued Johnston for past due rental payments under a lease agreement for computer equipment. Johnston counterclaimed alleging violations of the Deceptive Trade Practices Act (DTPA), breach of contract, rescission of the contract, declaratory judgment that the lease was void, and negligent misrepresentation. After a bench trial, the trial court entered judgment for McKinney for $1,752.92 due under the lease agreement, and for attorney fees. The trial court entered a take nothing judgment against Johnston on his counterclaim. Johnston presents seven issues for review contending the trial court erred: (1) by failing to find McKinney's conduct was unconscionable under the Deceptive Trade Practices Act (DTPA) TEX. BUS. & COM.CODE ANN. § 17.50(a)(3) (Vernon 1987 & Supp.1999); (2) by finding Johnston waived his implied warranty of merchantability claim because of a disclaimer in the lease; (3) by upholding McKinney's disclaimer of the implied warranty of merchantability; (4) by finding McKinney did not breach its implied warranty of merchantability; (5) by finding no failure of consideration; (6) by entering judgment for McKinney when the evidence was legally and factually insufficient to support it; and (7) by entering judgment in favor of McKinney against Johnston individually. We reverse the judgment of the trial court and remand this cause for a new trial.

## I. FACTUAL BACKGROUND.

McKinney presented the following evidence at the bench trial. Mr. Jerome Epstein, president of McKinney, testified that no one from McKinney selected the computer equipment leased to Johnston. He stated that Ms. Judy Johnston, business manager for Johnston, told him she met Teresa Rodriguez, chief officer for Amicus Computers, at a function and decided to employ Amicus to sell Johnston a computer and design a program for their business. Amicus was not an agent, representative, partner, co-venturer, "or anything" with McKinney. Epstein stated that his company leased the computer equipment to Johnston, and that Johnston selected the equipment. He stated he knew Johnston was going to use the equipment "generally" for financial transactions in his practice. McKinney assigned the lease to First City Bank after the first monthly rental payment by Johnston. An officer at the bank told Epstein that Johnston was paying slowly because "the computer program was not to their satisfaction." Johnston did not make the final payment of ten percent (10%) of the purchase price, or fair market value which he had agreed to with McKinney in an addendum to the lease agreement. Johnston did

not terminate the rental contract in writing as required by the lease agreement, nor did Johnston return the computer equipment to McKinney.

Judy Johnston, appellants' business manager, was the only witness for Johnston. In 1989, Ms. Johnston contacted Amicus Computers (Amicus), a computer consulting firm, that advised her to lease "chiropractic specific" computer equipment and software from McKinney. Ms. Johnston completed a credit application with Amicus, and the lease agreement was later sent to Johnston by McKinney. McKinney bought the equipment from Amicus, and the lease shows McKinney as the lessor of the equipment, Johnston as the lessee, and Amicus as the supplier of the equipment. The lease is dated May 11, 1989, and in August 1991, Ms. Johnston noticed an increase in account receivables. Suspecting a computer problem, Ms. Johnston hired two computer consulting firms who advised her they could not diagnose the problem. Ms. Johnston called Mr. Epstein in August 1991, and Epstein told her that there was nothing he could do other than supply a lease on other equipment. In October 1991, Ms. Johnston contacted Amicus and was advised that the "problem was related to the print cue of the computer" and the computer "would hold no more than 100 claims." When the number of claims entered into the computer exceeded 100, the computer would lose them. In January 1992, Ms. Johnston bought new computer equipment and stored the Amicus equipment in her garage.

Over objection by McKinney, Ms. Johnston testified that they lost $33,376.00 in insurance claims as a result of the defective equipment. McKinney objected to her testimony about damages on the grounds that the disclaimer in the lease agreement exempted McKinney from any liability for defects in the computers, and that Amicus was responsible for their problems. The objection was overruled by the trial court. Ms. Johnston also stated that she had paid a total of $24,171.30 in lease payments, and

she continued making the payments after discovery of the defects because the bank owned the lease and she felt obligated to the bank. Ms. Johnston called Mr. Epstein to discuss a letter she received from him indicating McKinney had not received a written termination notice and that the lease continued until terminated by written notice. Mr. Epstein told her the lease provided for a payment of ten percent (10%) of the purchase price upon termination, or $1,714.00. She told Mr. Epstein she would not pay anything further, and that he could pick up the equipment in her garage.

## II. STANDARD OF REVIEW.

This was a bench trial and the trial judge entered findings of fact and conclusions of law. Johnston requested amended findings of fact and conclusions of law. The trial judge did not rule on Johnston's request for amended findings and conclusions, but entered corrected findings of fact and conclusions of law. A statement of facts of the bench trial proceedings was also prepared by the court reporter. Because we have a statement of facts, the trial court's findings of fact are not conclusive. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). In reviewing the trial court's findings of fact for legal and factual sufficiency of the evidence supporting them, we apply the same standards as we apply in reviewing the sufficiency of the evidence supporting a jury's finding. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Thus, in reviewing appellants' legal insufficiency points, we may consider only the evidence and inferences, viewed in their most favorable light, that tend to support the trial court's finding, disregarding all evidence to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, we must uphold the finding. *See*

*Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). In reviewing appellants' claim of factual insufficiency, we must examine all of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). We may set aside the finding only if the evidence is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Superior Derrick Services v. Anderson,* 831 S.W.2d 868, 871 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■■■ Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Spiller v. Spiller,* 901 S.W.2d 553, 556 (Tex.App.—San Antonio 1995, writ denied). Conclusions of law will not be reversed, unless they are erroneous as a matter of law. *Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 503 (Tex.App.—Waco 1997, pet. denied). In addition, a trial court's conclusions of law are reviewed de novo as legal questions. *Id.* Incorrect conclusions of law will not require a reversal, however, if the controlling finding of facts will support a correct legal theory. *Id.*

## III. DISCUSSION.

### A. DTPA Unconscionability.

Appellants contend that the trial court erred by failing to find that McKinney's conduct constituted an "unconscionable action or course of conduct" as defined by the DTPA. Alternatively, appellants contend the trial court erred by not entering any findings of fact on Johnston's DTPA claim of unconscionability.

### 1. Failure to file findings and conclusions.

■■ Johnston filed proposed amended findings and conclusions after the trial court entered its initial findings and conclusions. Johnston argues he cannot ascertain upon what facts and grounds the trial court based its judgment denying his DTPA gross-disparity unconscionability cause of action. The trial court did not rule on Johnston's amended findings and conclusions, and thereafter entered "corrected findings of fact and conclusions of law."

■■■ The court shall file any additional findings and conclusions *that are appropriate* within ten days after a request is filed. Tex.R. Civ. P. 298; *Tamez v. Tamez,* 822 S.W.2d 688, 692–93 (Tex. App.-Corpus Christi 1991, writ denied). If the record shows that the complaining party did not suffer injury, the failure to make such additional findings does not require reversal. *Id.* Where refusal does not prevent the adequate presentation of the matter being complained of on appeal, no reversible error has occurred. *Id.* Appellant must show from the record that the trial court's refusal to file such findings and conclusions was reasonably calculated to cause and did so cause the rendition of an improper judgment. *Id.* If appellant requests findings directly contrary to, or inconsistent with, the original findings, the court need not make those requested findings. *Id.* Further, if the requested findings will not result in a different judgment, those findings need not be made. *Id.*

Appellants have not shown from the record how the trial court's refusal to file such findings and conclusions was reasonably calculated to cause and did so cause the rendition of an improper judgment, nor have they shown they were prevented from adequately presenting their complaint on appeal. We find no evidence of injury to appellants due to the trial court's refusing his request for additional findings and conclusions. *See Longoria v. Greyhound Lines, Inc.,* 699 S.W.2d 298, 305 (Tex.App.-San Antonio 1985, no writ); *Allred v. Harris County Child Welfare Unit,* 615 S.W.2d 803, 807 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.). We overrule appellants' contention that the trial court erred in not entering any findings

278

on Johnston's DTPA claim of gross-disparity unconscionability.

## 2. Did McKinney's conduct constitute "unconscionable action or course of conduct" as defined by the DTPA?

In issue one, appellants challenge the legal and factual sufficiency of the evidence to support the trial court's implied nonfinding of McKinney's unconscionable action, and contend they have proved their DTPA gross-disparity unconscionability claim as a matter of law. Finding 11 was the only express finding of fact relating to appellants' gross-disparity unconscionability claim: "11. That Plaintiff made no representations of any nature to the Defendants relating to the computer equipment." The only conclusion of law concerning appellants' unconscionability claim was conclusion 5: "That the lease transaction between Plaintiff and Defendants was not unconscionable."

Appellants contend section 17.45(5)(B) of the Texas Business and Commerce Code governs this case. That section provided the following at the time this suit was filed:

"Unconscionable action or course of action" means an act or practice which, to a person's detriment: ... (B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

TEX. BUS. & COM.CODE ANN. § 17.45(5)(B) (Vernon 1987)

Appellants argue that the only issue for the trier of fact was gross disparity. They claim that they established gross-disparity unconscionability as a matter of law, and therefore, that the trial court erred by failing to find gross-disparity unconscionability as a matter of law. Appellants are attacking an adverse finding by the trial court on an issue for which they had the burden of proof. Because of this, they must "surmount two hurdles." *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Taub v. City of Deer Park,* 912 S.W.2d 395, 397 (Tex.App.-Hous-

ton [14th Dist.] 1995, no writ)(*Sterner* applies to bench trials, such as this case and *Taub* wherein the fact-finders were the trial judges). "First, the record must be examined for evidence that supports the [trial judge's] finding, while ignoring all evidence to the contrary." *Sterner,* 767 S.W.2d at 690. "Second, if there is no evidence to support the fact finder's answer, then, the entire record must be examined to see if the contrary proposition is established as a matter of law." *Id.*

Additionally, economic loss alone may support recovery. *Teague v. Bandy,* 793 S.W.2d 50, 54 (Tex.App.-Austin 1990, writ denied). Where there is gross disparity between that delivered and that received, there is no requirement to show intent or a specific misrepresentation. *Id.* at 56–57. *See also Bekins Moving and Storage Co. v. Williams,* 947 S.W.2d 568, 580 (Tex.App.-Texarkana 1997, no writ); *Vick v. George,* 671 S.W.2d 541, 550 (Tex. App.-San Antonio 1983), *rev'd on other grounds,* 686 S.W.2d 99 (Tex.1985).

At least one court has stated the rules we are to follow in determining when unconscionable actions resulting in gross disparity. *Teague,* 793 S.W.2d at 54. The *Teague* court stated those rules as follows:

The DTPA further provides that a consumer may maintain an action where any person's unconscionable action or course of action is a producing cause of the consumer's actual damages. Section 17.50(a)(3). An unconscionable action is one that, to the consumer's detriment, results in a gross disparity between the value the consumer received and the consideration paid in a transaction involving the transfer of consideration. *Chastain v. Koonce,* 700 S.W.2d 579, 583 (Tex.1985); section 17.45(5)(B). A consumer may maintain a DTPA cause of action for unconscionable conduct even if the seller made no specific misrepresentations. *Commercial Escrow Co. v. Rockport Rebel, Inc.,* 778 S.W.2d 532, 538 (Tex.App.–Corpus Christi 1989, writ

denied). Neither action requires a consumer to prove that the seller intended to deceive the consumer. *Chastain,* 700 S.W.2d at 583; *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex.1980). *Teague,* 793 S.W.2d at 54.

In the present case, Ms. Johnston testified that Johnston paid $24,171.30 to McKinney, in 45 monthly installments, as rent for the computer and software. She stated: "Not only did Johnston not get any benefit from it, but it cost $33,476.00 in lost income." She also testified that Johnston spent $2,000 for two computer experts to attempt to repair the equipment; they advised her they could not fix it. McKinney presented no evidence to refute this testimony. We find there is no evidence to support the trial court's implied finding that the lease transaction was not gross-disparity unconscionable. *Id.* We further find there was no evidence to support the trial court's implied nonfinding of gross disparity between value paid and received by Johnston.

■■■ We next determine if the contrary proposition was established as a matter of law. *Sterner,* 767 S.W.2d at 690. If the contrary proposition is established conclusively by the evidence, the point of error will be sustained. *Meyerland Community Improvement Ass'n v. Temple,* 700 S.W.2d 263, 267 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). Ms. Johnston proved that the equipment was effectively worthless and that it cost them $33,476.00 lost income and $2,000.00 for service calls in addition to the $24,171.30 they paid in rent. No evidence was presented by McKinney to refute Ms. Johnston. When the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, in accuracies, and circumstances tending to cause suspicion thereon, it is taken as true, as a matter of law. *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 882 (Tex.1990); *Hanssen v. Our Redeemer Lutheran Church,* 938

S.W.2d 85, 91 (Tex.App.-Dallas 1996, writ denied). These are the tests that courts have traditionally applied to an interested witness's testimony, whether in summary judgment proceedings or in jury or nonjury trials, involving the question of whether a fact is established or negated as a matter of law. *Id.* Accordingly, we find Johnston has established gross-disparity unconscionability as a matter of law and their contention in issue one that the trial court erred in making an implied nonfinding of gross disparity is sustained.

### B. Implied Warranty of Merchantability.

Next, appellants contend that McKinney breached its implied warranty of merchantability because the evidence shows as a matter of law the computer system was not merchantable. Appellants also argue that McKinney failed to plead the affirmative defense of disclaimer, and therefore, waived this defense. Consequently, appellants contend the trial court erred as a matter of law by failing to find that McKinney had breached its implied warranty.

### 1. The Disclaimer.

Johnston makes two arguments regarding the disclaimer: first, Johnston claims that waivers and disclaimers like the one in this case are void as a matter of law under section 17.42 of the Texas Business and Commerce Code, and second, that the affirmative defense of disclaimer in the lease agreement was not pleaded by McKinney and therefore, the trial court erred by failing to find that McKinney had breached its implied warranty.

The disclaimer in the lease provided:

*2. Disclaimer.* LESSEE ACKNOWLEDGES THAT LESSOR HAS NOT PARTICIPATED IN THE SELECTION OF THE EQUIPMENT AND THAT THE EQUIPMENT IS OF THE TYPE, DESIGN, SIZE, CAPACITY AND MANUFACTURE SELECTED

BY LESSEE. LESSEE ACKNOWL-
EDGES THAT LESSOR WILL NOT,
AND HAS NO OBLIGATION TO, IN-
SPECT THE EQUIPMENT AND
THAT LESSOR HAS NOT MADE
AND WILL NOT MAKE ANY REP-
RESENTATION, WARRANTY OR
COVENANT, EXPRESS OR IM-
PLIED ON WHICH LESSEE MAY
RELY, WITH RESPECT TO THE
MERCHANTABILITY, FITNESS,
SAFETY, CONDITION, QUALITY,
DURABILITY OR SUITABILITY
FOR LESSEE'S PURPOSES OF THE
EQUIPMENT IN ANY RESPECT,
THE EQUIPMENTS COMPLIANCE
WITH ANY LAW, RULE SPECIFI-
CATION OR CONTRACT PERTAIN-
ING THERETO, OR PATENT IN-
FRINGEMENT, LATENT DEFECTS,
OR ANY OTHER REPRESENTA-
TION, WARRANTY OR COVENANT,
EXPRESS OR IMPLIED. LESSEE
FURTHER ACKNOWLEDGES THAT
LESSOR IS NOT A MANUFACTUR-
ER, OR MERCHANT OR DEALER
IN, EQUIPMENT OF THE SAME
TYPE AS THE EQUIPMENT AND
THAT LESSOR HAS NO DUTY TO
ENFORCE ANY WARRANTIES ON
BEHALF OF LESSEE. LESSOR
SHALL NOT BE LIABLE TO LES-
SEE FOR ANY LIABILITY, LOSS OR
DAMAGE CAUSED OR ALLEGED
TO BE CAUSED DIRECTLY OR IN-
DIRECTLY BY THE EQUIPMENT
OR BY ANY INADEQUACY THERE-
OF OR DEFICIENCY OR DEFECT
THEREIN, WHETHER DIRECT, IN-
DIRECT, EXEMPLARY OR PUNI-
TIVE, WHETHER OR NOT LESSOR
HAS BEEN ADVISED OF THE POS-
SIBILITY OF SUCH DAMAGES.

 First, we address Johnston's claim that the disclaimer is void. The disclaimer in this agreement complied with section 2.316 of the Texas Business and Commerce Code. "Such a disclaimer does not offend the 'no waiver' provision in a suit for breach of warranty under the DTPA." *Southwestern Bell Telephone v. FDP*

*Corp.,* 811 S.W.2d 572, 576–77 (Tex.1991). "We agree that a liability limitation would be invalid under § 17.46(b)." *Id.* This contention is overruled.

 Next we turn to McKinney's failure to plead the disclaimer as an affirmative defense. Disclaimer of the implied warranty of fitness is an affirmative defense and must be pleaded under rule 94 of the Texas Rules of Civil Procedure. *Sherwin–Williams Company v. Perry Company,* 424 S.W.2d 940, 949–50 (Tex. Civ. App.–Austin 1968), *writ ref'd n.r.e.,* 431 S.W.2d 310 (Tex.1968). The rule is well settled that an affirmative defense may be tried by consent, even if it is not properly pleaded. *Rodeheaver v. Steigerwald,* 807 S.W.2d 790, 792 (Tex.App.—Houston [14th Dist.] 1991, writ ref'd). The trial court in this case expressly found in its conclusions of law that the disclaimer was conspicuous. The lease with the disclaimer was introduced into evidence without objection by appellants.

 McKinney argues that Johnston cannot complain about its failure to plead disclaimer because Johnston did not specially except to McKinney's pleadings. McKinney cites us to rule 90 of the Texas Rules of Civil Procedure. Rule 90 provides, in pertinent part:

> Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before ... the judgment is signed, shall be deemed to have been waived....

Rule 90 applies to defects and omissions in pleadings, not *absence* of pleadings. Here, the problem is not Johnston's failure to specially except, but McKinney's failure to plead an affirmative defense. "Appellant had a right to assume that the case made by the pleadings was the case, and the only one, [he] was called upon to defend." *Hollingsworth v. Northwestern National Ins. Co.,* 522 S.W.2d 242, 247 (Tex.Civ.

App.—Texarkana 1975, no writ). Rule 94 requires affirmative pleading of certain specified defenses and of "any other matter constituting an avoidance or affirmative defense." *Tacon Mech. Contractors v. Grant Sheet*, 889 S.W.2d 666, 671 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Where an affirmative defense is not pleaded or tried by consent, it is waived. *Id.* Because McKinney did not affirmatively plead the disclaimer in the lease contract as an affirmative defense, that defense is waived.

Finding that McKinney did not plead disclaimer as an affirmative defense, we must now determine if the issue was tried by consent. Rule 67 of the Texas Rules of Civil Procedure provides for trial by consent. At the start of the trial, McKinney introduced into evidence the lease contract and several other documents involved in this transaction without objection by Johnston. The only reference to the disclaimer during the trial was in the form of two objections by McKinney to testimony by Ms. Johnston concerning Johnston's damages incurred as a result of the defective computer system. Both objections were overruled. Mr. Epstein did not attempt to establish the disclaimer in the lease. McKinney did not ask Ms. Johnston if she was aware of the disclaimer provision in the lease. McKinney made no argument to the trial court about the disclaimer. McKinney filed no trial amendment alleging disclaimer, nor does McKinney claim it requested a trial amendment. McKinney filed proposed findings of fact stating only, "that the lease contained conspicuous language in large print." McKinney's proposed conclusion of law recited, "that the disclaimer provisions in the lease were conspicuous."

In spite of the lack of discussion about the disclaimer to the trial court, McKinney still contends the issue was tried by consent. It bases this on the fact that Johnston did not object to the disclaimer in the lease when the entire lease contract was placed into evidence. However, the lease was relevant to Johnston's claims of breach of contract, breach of implied warranty, and DTPA unconscionability, and was an integral part of the case, separate and apart from the disclaimer. Both of the parties needed the contract to pursue their claims.

It is well established in Texas law, that when evidence relevant to an unpleaded issue, as well as a pleaded issue, has been admitted without objection, the doctrine of trial by consent "should not be applied unless clearly warranted." *Libhart v. Copeland*, 949 S.W.2d 783, 797 (Tex.App.—Waco 1997, no writ). To determine whether an issue was tried by consent, "we must examine the record not for evidence of the issue, but rather for evidence of *trial* of the issue." *Id.* "The doctrine of implied consent applies only where it appears from the record that the issue was actually tried, although not pleaded." *Id.*

As we have set out in this opinion, the disclaimer issue was never *tried*. McKinney objected twice to Ms. Johnston's testimony about damages on the ground that Johnston had no claim because of the disclaimer, which objections were overruled. There was *no* testimony from anyone attempting to establish the disclaimer part of the lease contract. The lease was introduced as the document supporting McKinney's claim for breach of contract, and at that point, no mention was made that the disclaimer barred Johnston's claim. *See RE/MAX of Texas, Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex.App.—Houston [1st Dist.] 1997, no writ) (failure to properly plead an affirmative defense and an absence of trial by consent).

Thus, in this case, we find that (1) McKinney did not file a proper pleading alleging the affirmative defense of disclaimer, (2) the matter was not tried by consent, and (3) the issue was not properly before the trial court. The trial court erred in finding the disclaimer barred Johnston's claim for breach of implied warranty of merchantability. We sustain ap-

pellants' contention that McKinney waived its disclaimer defense.

## 2. Breach of Implied Warranty of Merchantability.

Appellants contend section 2A.212 of the Texas Business & Commerce Code imposes an implied warranty of merchantability upon the leased computer system. Section 2A.212, which extends the implied warranty of merchantability to lease contracts, did not take effect until September 1, 1993, some four years after the parties entered into this lease agreement, and does not apply to this transaction. *See LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 131 (Tex.App.—Amarillo 1997, writ denied). Therefore, any implied warranty of merchantability would be governed by common law warranties of merchantability. *Id.*

■ Generally, to recover under the DTPA on a breach of a warranty, the plaintiff must show (1) he is a consumer, (2) existence of the warranty, (3) breach of the warranty, and (4) the breach was a producing cause of damages. *Leonard & Harral Packing Co. v. Ward*, 883 S.W.2d 337, 342 (Tex.App.—Waco 1994), *rev'd on other grounds*, 937 S.W.2d 425 (Tex.1996).

We will review the breach of implied warranty issue under the *Sterner* case, as discussed under issue one, because appellant is making a "matter of law" challenge and we must first determine if there is no evidence to support the nonfinding. If there is no evidence to support the implied nonfinding, then we examine the entire record to determine if the contrary proposition is established as a matter of law. *Sterner*, 767 S.W.2d at 690.

■ Johnston leased the equipment from McKinney and qualifies as a consumer, as that term is defined in section 17.45(4) of the Texas Business and Commerce Code, because he sought to acquire goods from McKinney by lease and was not a business consumer with assets of $25 million or more. Tex. Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987 & Supp.

1998); *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex.1987). The goods acquired by lease from McKinney form the basis of the complaint. *Melody Home*, 741 S.W.2d at 352. Johnston has established consumer status, the first element in a DTPA breach of warranty claim. *Leonard & Harral Packing Co.*, 883 S.W.2d 337, 342.

■ Few Texas cases have addressed the application of the common law breach of warranty of merchantability to a lease of goods. However, those addressing it have found that the implied warranty of merchantability applies to lease transactions. *See LaBella*, 942 S.W.2d at 131 (applying an implied warranty to a lease on a vehicle and stating that the warranty is a representation or promise by a lessor as to the quality or suitability of the consideration leased); *W.R. Weaver Co. v. Burroughs Corp.*, 580 S.W.2d 76, 81 (Tex. Civ.App.—El Paso, 1979, writ ref'd n.r.e.) (holding that the language in the lease agreement for computer accounting programs was an effective disclaimer of an implied warranty but for language in a statement of installation conditions, which document created a genuine issue of material fact as to disclaimer); *American Lease Plan v. Ben–Kro Corp.*, 508 S.W.2d 937 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (finding a genuine issue of material fact as to the defendant's defense of breach of implied warranty for leased office and printing equipment). Older cases imply a warranty of merchantability to lease transactions and provide that a lessor of goods impliedly warrants that the goods are reasonably suitable for the uses or purposes known to be intended. *See Sims & Smith v. Chance*, 7 Tex. 561, 571–72 (1852); *Baker & Lockwood Mfg. Co. v. Clayton*, 40 Tex.Civ.App. 586, 90 S.W. 519, 520 (1905, no writ). Thus, even though section 2A.212 does not imply a warranty of merchantability to the lease in the present case, common law implies a warranty,

and the second element is established.[1]

Turning to the third element, the warranty was breached because the computer system was defective. *See Plas–Tex, Inc. v. U.S. Steel, Corp.*, 772 S.W.2d 442, 444 (Tex.1989). Ms. Johnston testified that Johnston acquired the system specifically to handle accounts receivable. She contacted Amicus in 1991 after discovering that the computer was losing accounts receivable and was advised that the system would only handle 100 claims. Amicus advised Ms. Johnston that the accounts were being dropped because of the "print cue of the computer." Ms. Johnston testified that Amicus told her the computer would "hold no more than 100 claims," and the "rest would drop out of sight in computer never-never land; therefore the loss of claims." She testified that the defect existed in the computer when Johnston first acquired it, but Johnston did not find out why the system was losing accounts receivable until 1991. According to Ms. Johnston, the defects in the system rendered it totally worthless. Because the computer system furnished by McKinney was worthless to Johnston's chiropractic practice, Johnston had to purchase new computer equipment. And, since McKinney did not object to the hearsay nature of Ms. Johnston's testimony about the defect in the computer as related to her by Amicus, Johnson has proved that the computer was defective at the time it left McKinney's possession. *See id.* We find that McKinney, as lessor of the goods, breached its implied warranty of merchantability because the computer system was defective and not suitable for the ordinary purposes for which it was used.

Finally, we address the fourth and final element: whether the breach of McKinney's implied warranty of merchantability was a producing cause of Johnston's actual damages and loss of profits. "Producing cause" is an "efficient, exciting or contributing cause, that in a natural sequence, produced the occurrence or injury." *Leonard & Harral Packing Co.*, 883 S.W.2d at 344. "A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred." *Doe v. Boys Clubs, of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex.1995). "For DTPA claims, the plaintiffs need only show producing cause ... and need not establish that the harm was foreseeable." *Id.* McKinney purchased the equipment from Amicus, then leased it to Johnston. Mr. Epstein testified he knew that Johnston was going to use it generally for financial transactions. McKinney presented no evidence to refute this testimony. We find that Johnston has established producing cause.

In short, appellants have proved that McKinney breached its implied warranty of merchantability and have therefore established the "contrary proposition" as a matter of law under *Sterner*. We sustain the appellants' contention under issue two that Johnston established its claim of implied warranty.

## IV. CONCLUSION.

We have found reversible error as a matter of law in the trial court's (1) implied nonfinding that McKinney's actions were not unconscionable; and (2) concluding that the disclaimer provision of the lease caused appellants' waiver of their claim of implied warranty of fitness. We find these errors of law probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1). We have found that appellants' claim of gross-disparity unconscionable action and their claim of implied warranty of fitness were valid, and that appellee waived its affirmative defense of disclaimer by failing to plead it. The damages to appellants were unliquidated and the liability issues were contest-

---

1. Our opinion merely implies a common law warranty of merchantability to a lease of goods, and it should not be read to adopt or reject a position as to whether an implied warranty applies to a lease of real property.

ed. We cannot remand as to damages only. Tex.R.App. P. 44.1(b); *United Sav. Ass'n of Texas v. Villanueva*, 878 S.W.2d 619, 623–24 (Tex. App.–Corpus Christi 1994, no writ). Furthermore, the supreme court has held that appellate courts have broad discretion to remand in the interest of justice. Tex.R.App. P. 43.3(b); *Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex.1966); *Cadle Co. v. Castle*, 913 S.W.2d 627, 634 (Tex.App.-Dallas 1995, writ denied). Because we are remanding for a new trial, we will not address appellant's contentions pertaining to the exclusion of evidence, the court's finding that Johnston breached the lease, the court's finding that Dr. Johnston should be liable individually, and Johnston's complaint regarding rescission. *See* Tex.R.App. P. 47.1.

In our opinion, the interests of justice would best be served for both parties by a remand of this case for a new trial. Therefore, we reverse the judgment of the trial court and remand this cause for a new trial.