Affirmed and En Banc Opinion filed February 12, 2004









Affirmed and En Banc Opinion filed February 12, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00125-CV

____________

 

MARK DAVID ULMER, Appellant

 

V.

 

DAWN ULMER, Appellee

 



 

On Appeal from the 245th
District Court

Harris County, Texas

Trial Court Cause No. 02-49999

 



 

E N   B A N C   O P I N I O N

Appellant Mark Ulmer appeals a finding of family violence
and the granting of a protective order issued pursuant to Title IV of the Texas
Family Code.  In one point of error,
appellant challenges the legal and factual sufficiency of the evidence to
support the trial court=s findings.  We affirm.








I.  
Jurisdiction

Whether we have jurisdiction
over an appeal from a family-violence protective order first came before this
court in Maharaj v. Mathis, No.
14-97-01329-CV, 1999 WL 111274 (Tex. App.CHouston [14th Dist.] March 4,
1999, no pet.) (not designated for publication).  In a plurality opinion, we determined that a protective order is not appealable.  See id. at
*1.  We recognized that appellate courts have jurisdiction only
over final judgments and interlocutory orders deemed appealable
by the legislature.  Id.  We held that a protective order is not a
final judgmentCand thus is interlocutoryCbecause, during the effective period
of the order, the trial court retains the power and jurisdiction to modify the
terms of the order.  Id.  We then noted that family protective orders
are not among the interlocutory orders expressly granted appellate review by
the legislature.  Id.  Hence, we dismissed the case for want of
jurisdiction.  Id.  We relied on the Maharaj
opinion when one of the parties in that case filed a subsequent notice of
appeal in an attempt to relitigate the same
issue.  See Maharaj
v. Mathis, No. 14-99-00505-CV, 2001 WL 395405, at *2 (Tex. App.CHouston [14th Dist.] April 19,
2001, pet. denied) (not designated for publication).  In both Maharaj
opinions, we relied on the reasoning of the Tenth Court of Appeals in Normand v. Fox, 940 S.W.2d 401, 402B403 (Tex. App.CWaco 1997, no writ).  








Since that time, the Tenth Court of Appeals has reconsidered
its position on this issue and has concluded that family-violence protective
orders are final and appealable if they are issued
outside of a pending proceeding.  Kelt v. Kelt, 67
S.W.3d 364, 366 (Tex. App.CWaco 2001, no pet.).   In fact, many of our sister courts have
addressed this jurisdictional issue and concluded likewise.  See B.C. v. Rhodes, 116 S.W.3d 878,
881B82 (Tex. App.CAustin 2003, no pet.); Cooke
v. Cooke, 65 S.W.3d 785, 787B88 (Tex. App.CDallas 2001, no pet.); Striedel v. Striedel,
15 S.W.3d 163, 164B65 (Tex. App.CCorpus Christi 2000, no pet.); Winsett v. Edgar, 22 S.W.3d 509, 510 (Tex.
App.CFort Worth 1999, no pet.); James
v. Hubbard, 985 S.W.2d 516, 518 (Tex. App.CSan Antonio 1998, no
pet.).  Based on our review of these
cases and our belief that a protective order issued outside of an ongoing
proceeding should be subject to appellate review, we reexamine our prior
position.[1]


We conclude that a family-violence protective order that gives injunctive relief and
disposes of all issues and parties is a final, appealable
order.  In reaching this conclusion, we agree that an
appellate court should examine an order=s functionCrather than its mere designationCto determine whether it is final or
interlocutory.  See Del Valle Indep. Sch. Dist. v. Lopez,
845 S.W.2d 808, 809 (Tex. 1992) (rejecting the Anotion that such matters of form control
the nature of the order@ and finding that Ait is the character and function of
an order that determine its classification@). 
Moreover, the ability of the trial court to modify an order should not
render it interlocutory.  See Rhodes,
116 S.W.3d at 881B82.  The mere fact that
an order may someday be modified does not intimate that the trial court has not
finally disposed of the parties and issues. 
Id. at 882.  To illustrate,
we borrow an analogy used by the Third Court of Appeals.  A permanent injunction that disposes of all
issues and parties is considered a final, appealable
judgment despite the fact the trial court retains jurisdiction to review, open,
vacate, and modify the injunction upon a showing of changed conditions.  Id. at 881B82. 
Thus, if a protective order is issued outside of an ongoing proceeding,
the trial court is granting injunctive relief and is fully disposing of all
parties and issues before it.  See id.
at 881.  Hence, the order is final and appealable.  All
prior statements from this court that are inconsistent with this opinion are
disavowed.[2]








II.   Background

Appellant and appellee Dawn Ulmer
were divorced on December 14, 2001. 
Shortly after the divorce, appellee went to
the City of Houston Police Department (AHPD@) to report that appellant had
exhibited harassing and threatening behavior towards her.  At that time, she did not pursue charges or a
protective order.  She was satisfied with
HPD sending a letter to appellant, which requested he stop all contact with
her.  Approximately ten months later, appellee filed for the protective order at issue in this
case.  

Appellee testified at the hearing on
her application for a protective order that, during the marriage, appellant was
extremely controlling and vengeful. 
Appellant had repeatedly threatened her life.  Specifically, he would tell her that Aevery person in the country was
going to know his name after he got done with [her], and he was going to kill
[her] and kill himself.@  He would constantly tell her A[t]onight
is the night@ or something to that
effect.  He would tell her Ahe would make sure that the
children would find us and knew it was [her] fault . . . .@  Appellee was aware
appellant owned a shotgun.  

On December 26, 2001, appellant demanded a coat of his when
he picked up their children.  When she told
him that he should have gotten the coat when he was supposed to pick up all of
his things, he became enraged and shoved her. 
Appellee ran into the house and tried to shut
the door.  However, appellant ripped the
door open, came into the house, said he was going to get the coat, and told her
that every threat he had made against her was going to come true.  Appellant said that appellee
would not know when it was going to happen, but that he was patient and would
wait.  Appellee
reported this incident to the police. 
The police sent a warning letter to appellant, but after a time, he
continued the stalking and harassing behavior. 









After the divorce, appellant started routinely showing up at
their eldest son=s soccer games and verbally
assaulting appellee in front of other people.  At one practice she attended with her
boyfriend, appellant verbally assaulted them both.  When their youngest son gave appellee=s boyfriend a hug, appellant
grabbed the boy, took him away, and started yelling that the boyfriend was a
bad man.  Appellee
had asked appellant not to attend their son=s soccer or baseball practices
because appellant had on prior occasions yelled at her in front of the children
and in front of other people who were there. 
Appellant refused, saying that he could do whatever he wantedCappellee could not stop him.  

At the hearing, appellee discussed
behavior directed towards her boyfriend that made her believe appellant is
still obsessed with her.  Appellee=s boyfriend, John Thomas, is an
associate pastor at Gloria Day Lutheran Church (AGloria Day@).  This is the church the parties attended
during their marriage.  Appellant
contacted Thomas=s supervisor to complain about
the relationship between appellee and Thomas, sent a
letter to the Lutheran church officials complaining about the relationship, and
put flyers on cars in the Gloria Day parking lot complaining about Thomas.  

Appellee also testified to many
miscellaneous acts she said have made her more afraid of appellant since
December of 2001.  Once when she and the
children were visiting Thomas=s house, she noticed appellant
was parked outside in his truck; when she saw his face, he drove away.  Appellant called her later that night.  Appellee has not
been to Thomas=s house since that
evening.  Appellee,
a school teacher, also testified appellant has shown up at her classroom
without reason on about five occasions, and on a couple of occasions, tried to
get into an argument while her students were at their desks doing their
work.  On September 19, 2002, appellant
came to the school where she teaches, looking for a soccer ball that was in her
vehicle.  Appellee
was later told by more than one person that appellant had been looking for her;
his visit frightened her.  Appellant
became very upset when one of the boys gave appellee
a hug before he left school with appellantCappellant then told the child
that he was not allowed to do that anymore. 
The child did hug appellee on another
occasion, and appellant began yelling. 
The outburst made a couple of the children who were in the school office
cry.  








Appellee testified that since the
incident at her house in December of 2001, things have escalated and she is
afraid appellant is about to Asnap.@  Appellant calls her, e-mails her, and
harasses people she knows.  Appellee has informed her neighbors of the situation,
installed an alarm system, changed the locks on her doors, and gotten a dog.

Officer Leonard Dawson, who interviewed appellee
when she went to HPD shortly after the divorce, also testified at the
hearing.  Appellee
reported to him the details of the December 2001 incident.  Appellee seemed
distressed and said she feared for her safety and for the safety of her
children.  Officer Dawson acknowledged
that, during the interview, appellee mentioned
financial difficulties she was having and discussed that she worked two
jobs.  Appellee
indicated she did not wish to pursue charges. 
Officer Dawson testified appellee seemed
credible and he had no reason to doubt what appellee
was telling him, but he felt there was not probable cause to support charges at
that time.

Linda Fouty testified that appellee called her on December 26, 2001, and told her  appellant had pushed her, was in the house,
was yelling, and would not leave.  Appellee told Fouty she was very
scared.  Fouty
got in her car and drove to appellee=s house, but by the time she
got thereCabout five minutes laterCappellant was gone.  When she got to the house, the furniture was
in place and there were no signs of a struggle. 
She said appellee was crying, shaking, and
appeared frightened.  Fouty
admitted she did not like appellant.

Jill Arnold testified she was at the school when appellant
showed up on September 19, 2002. 
Appellant was standing outside of the school with two boys and asked
Arnold if she taught with appellee.  Appellant asked Arnold to go inside the
school and find appellee because the boys needed
their soccer ball out of appellee=s car.  After being informed appellee
had left the school to go to dinner with another teacher, Arnold relayed that
information to appellant.  Arnold
believed she only left appellant alone for about a minute to a
minute-and-a-half when she went inside the school.  Appellant kept telling Arnold that appellee=s car was at the school.  Appellant waited around for a couple of
minutes and then drove off.  Arnold
testified appellant=s behavior seemed normal, and
he did not appear angry.








Appellant testified at the hearing and disputed most of appellee=s testimony.  He said he had not committed violence against
his ex-wife, and had never threatened violence against her or anyone else.  Further, he had no intention of doing so in
the future.  He admitted to telling his
brother that he had told his ex-wife he was going to kill himself, and had said
everyone would know his name.  Appellant
said he made those comments prior to the divorce, and he did not have an intent
to follow through on them.  Appellant
said that on December 26, 2001, he did not threaten appellee,
did not shove her, and did not enter her house. 
Appellant denied that on September 19, 2002, he spoke to anyone other
than Arnold about appellee or the soccer ball.  Appellant said that on September 20, 2002, he
grabbed his child away from Thomas and called Thomas a bad man.  Appellant testified he did not repeatedly
yell at appellee; he just spoke to her in a stern
voice.  Appellant said he did not park
outside of Thomas=s houseCthe assistant coach of one of
his boys= soccer teams happens to live
on the same street as Thomas.  Appellant
testified appellee has constantly threatened to call
the police on him when he does innocent things, like dropping things off at the
school.

Appellant said he attended Gloria Day before and after the
divorce, and on one occasion spoke with Thomas about the divorce.  Appellant could not recall whether Thomas
actually counseled him or gave him referrals to other counselors.  He admitted he became angry when he found out
Thomas and appellee were dating.  Appellant said he e-mailed and spoke with the
senior pastor to express his displeasure. 
He then wrote a letter to the president of the Synod of Lutheran
Churches to express his concerns. 
Appellant acknowledged making the flyer about Thomas, but said he only
made one copy of it, and placed it on only one car in the church parking lot.

III.  
Sufficiency of the Evidence

At the conclusion of the
hearing, the trial court found that appellant had committed family violence and
that family violence was likely to occur again in the future.  In his sole point of error, appellant
contends the evidence is legally and factually insufficient to support the
trial court=s findings.








In reviewing a trial court=s findings of fact for legal
and factual sufficiency, we apply the same standards that we apply in reviewing
jury findings.  Johnston v. McKinney
American, Inc., 9 S.W.3d 271, 276 (Tex. App.CHouston [1st Dist.] 1999, pet.
denied).  In considering legal
sufficiency, we view the evidence in a light that tends to support the disputed
findings and disregard all evidence and inferences to the contrary.  See Lee Lewis Constr.,
Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001).  If more than a scintilla of evidence exists,
it is legally sufficient.  Id.  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about a vital fact=s existence.  Id. at 782B83.  In reviewing factual sufficiency, we examine
the entire record, considering both the evidence in favor of, and contrary to,
the challenged findings.  See Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
After considering and weighing all the evidence, we set aside a fact
finding only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.  See
Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).  The trier of fact
is the sole judge of the credibility of the witnesses and the weight to be
given their testimony.  GTE Mobilnet of S. Tex. v. Pascouet,
61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied); Cohn v. Comm=n for Lawyer Discipline, 979 S.W.2d 694, 696 (Tex.
App.CHouston [14th Dist.] 1998, no
pet.).  We will not substitute our
judgment for that of the trial court merely because we might reach a different
conclusion.  Maritime Overseas Corp.
v. Ellis, 971 S.W.2d 402, 407 (Tex.1998); Cohn, 979 S.W.2d at 696.








The Family Code defines family violence as Aan act by a member of a family
or household against another member of the family or household that is intended
to result in physical harm, bodily injury, assault, or sexual assault or that
is a threat that reasonably places the member in fear of imminent physical
harm, bodily injury, assault, or sexual assault, but does not include
defensive measures to protect oneself.@  Tex.
Fam. Code Ann. ' 71.004(1) (Vernon 2002)
(emphasis added).  The trial court
determined thatCin the context of the previous
threats to kill appelleeCmany acts of appellant
constituted family violence such as appellant=s going to appellee=s residence after the divorce,
appellant=s showing up at appellee=s place of employment,
appellant=s calling appellee
on her cellular phone, and appellant=s expressions of anger and yelling.  The trial court also found that such violence
was likely to continue.

Appellant argues that there is no evidence showing that (1)
appellant acted with the intent to cause physical harm, bodily injury, or
assault; or (2) appellant=s actions did result in
physical harm, bodily injury, or assault; or (3) appellant made any threat that
reasonably placed appellee in fear of imminent
physical harm, bodily injury, or assault. 
Appellant emphasizes that, at one point in her testimony, appellee answered affirmatively to a question asking if the
last threatening thing appellant did to her was on December 26, 2001.  While the excerpt from the reporter=s record is accurate, the
recordCwhen read in its entiretyC shows appellee
testified to many acts of appellant after that date, which would reasonably
place her in fear of imminent physical harm and which she said frightened
her.  The contention that nothing
threatening happened from appellee=s perspective during the
ensuing ten-month period is simply not supported by a thorough reading of her
testimony.  Appellant also contends appellee admitted that the basis of her fear is appellant=s refusal to obey her directive
not to attend certain athletic events. 
Again, this excerpt of her testimony ignores the other acts appellee testified to subsequent to the December incident.

Appellant further argues Officer Dawson=s testimony supports appellant=s position that the finding of
family violence is contrary to the great weight and preponderance of the
evidence presented at the hearing. 
Appellant contends that, because Officer Dawson did not believe there
was probable cause to pursue the case further when he met with appellee in December, the trial court=s finding of family violence in
June of the following year is without support. 









Making all inferences in favor of the trial court=s finding, as we must, we
conclude appellee=s testimony describing the
December 2001 incident and the events subsequent to that incident constitutes
more than a scintilla of evidence that appellant engaged in an act that is a
threat that reasonably placed appellee in fear of
imminent physical harm, bodily injury, or assault.  Moreover, we cannot say the evidence is too
weak to support the court=s finding or that the finding
is so against the overwhelming weight of the evidence as to be manifestly
unjust.  As the sole judge of the
credibility of the witnesses and the weight to be given their testimony, the
trial court was entitled to believe appellee=s version of events.  We overrule appellant=s sole point of error. 

CONCLUSION

In the absence of other pending
litigation between the parties, family‑violence protective orders are
final and appealable. 
We hold that the evidence is legally and factually sufficient to support
the trial court=s findings in this case and
affirm entry of the protective order.

 

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and En Banc Opinion filed February 12, 2004.

En Banc
Court consists of Chief Justice Hedges, Justices Yates, Anderson, Hudson,
Fowler, Edelman, Frost, Seymore, and Guzman.

 











[1]  The State
joins appellant in arguing that we have jurisdiction over this type of
protective order.





[2]  We note our
reconsideration of the court=s jurisdiction over this type of protective order
would not have changed the outcome in the Maharaj
case.  The concurrence in the first
opinion noted that the protective order at issue was filed after appellee had filed a motion to modify the parent-child
relationship.  Maharaj,
1999 WL 111274, at *2 (Fowler, J., concurring).  Because that order was issued during the pendency of such a suit, all issues between the parties had
not been decided, and the order was not final. 
Thus, it was not appealable.