NO. 07-03-0102-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JANUARY 31, 2005



______________________________




RAY LAYNE FERGUSON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 64TH DISTRICT COURT OF HALE COUNTY;



NO. 005871984; HONORABLE JACK R. MILLER, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Ray Layne Ferguson appeals his conviction for delivery of a controlled
substance by constructive transfer. He contends that the evidence was legally and
factually insufficient to support the conviction, and that he received ineffective assistance
of counsel. We affirm.


BACKGROUND

 Amy Yarbrough, working as a confidential informant for the Plainview Police
Department, agreed to assist Mandy Williamson, an undercover officer, in setting up a drug
transaction. Yarbrough made two phone calls to appellant. During the calls she spoke with
both appellant and appellant's wife, Bonnie Rodriguez, and arranged to purchase cocaine. 
As arranged, Rodriguez took Williamson's money, borrowed Yarbrough's vehicle to pick
up the drugs, and returned the cocaine to Williamson. Throughout the transaction,
Williamson wore a device which transmitted audio to other officers monitoring the deal. 
After Williamson received the cocaine from Rodriguez, Williamson signaled the monitoring
officers who entered the residence and arrested appellant and Rodriguez.

 Appellant was tried and convicted by a jury for delivery of a controlled substance by
constructive transfer (1) and sentenced to seven years imprisonment. Appellant appeals by
two issues.





ISSUE ONE: LEGAL AND 

FACTUAL SUFFICIENCY OF THE EVIDENCE


 Appellant first asserts that the evidence was legally and factually insufficient to
support his conviction. He contends that, absent Yarbrough's testimony, the evidence was
insufficient to support the conviction and that Yarbrough's testimony may not be considered
because it was not corroborated. Appellant cites Tex. Crim. Proc. Code Ann. art. 38.141
(Vernon Supp. 2004) (2) and Young v. State, 95 S.W.3d 448 (Tex.App.-Houston [1st Dist.]
2002, pet. ref'd), as support for his contention that Yarbrough's testimony could not be
considered because it was not corroborated. Article 38.141 provides: 

(a) A defendant may not be convicted of an offense under Chapter 481,
Health and Safety Code, on the testimony of a person who is not a licensed
peace officer or a special investigator but who is acting covertly on behalf of
a law enforcement agency or under the color of law enforcement unless the
testimony is corroborated by other evidence tending to connect the defendant
with the offense committed. 


 A confidential informant's testimony is sufficiently corroborated if, setting aside the
informant's testimony, the other inculpatory evidence, viewed in a light most favorable to
the verdict, tends to connect the accused to the commission of the offense, even if it does
not directly link the accused to the crime. See Cantelon v. State, 85 S.W.3d 457, 460-61
(Tex.App.-Austin 2002, no pet.). 

 Evidence is legally sufficient if, when viewed in the light most favorable to the jury's
verdict, a rational jury could have found the essential elements of the offense, beyond a
reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d
560 (1979); Clewis v. State, 922 S.W.2d 126, 132 n.10 (Tex.Crim.App. 1996). 

 Evidence is factually sufficient if, when all of the evidence is considered in a neutral
light, a rational jury could have made a finding of guilt beyond a reasonable doubt. See
Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). 

 In conducting a sufficiency review of the evidence for corroboration of Yarbrough's
testimony, we eliminate Yarbrough's testimony from consideration and examine the
remaining record for evidence tending to connect appellant to the commission of the
offense. See Cantelon, 85 S.W.3d at 461. Although there is no precise rule stating the
amount of evidence necessary to corroborate an informant's testimony, the "tends-to-connect" standard does not present a high threshold. Id. Circumstances which, if
considered individually, might not tend to connect a defendant to an offense, can tend to
connect a defendant to the offense when considered together. Id. at 460-61.

 In the present case, Rodriguez testified that appellant told Yarbrough, "We could
see, you know, if [Yarbrough] could come and pick up Bonnie [Rodriguez]," and then asked
Rodriguez "if [Rodriguez] wanted to go somewhere." According to Rodriguez, appellant
was aware that Yarbrough was looking for "some stuff" which Rodriguez understood meant
drugs. Williamson testified that after Rodriguez returned with the cocaine, appellant
suggested everyone go inside to avoid possible police surveillance. 

 Without considering Yarbrough's testimony, we conclude that, viewed in the light
most favorable to the verdict, the remaining evidence tends to connect appellant with the
offense. Thus, the evidence is sufficient to corroborate Yarbrough's testimony as required
by art. 38.141.

 We next review the evidence, including Yarbrough's testimony, for legal sufficiency. 
Scott Williams, a chemist with the Texas Department of Public Safety's laboratory, testified
that the substance sold to Williamson contained 1.64 grams of cocaine, a second degree
felony amount. See Tex. Health & Safety Code Ann. § 481.112(c) (Vernon 2003). 
Yarbrough testified that appellant told her during the phone call arranging the transaction
that,

 "I don't have any stuff, but I can make a phone call and I can get you some." Appellant
also arranged for Yarbrough to let Rodriguez borrow Yarbrough's car. Yarbrough testified
that she did not deal directly with Rodriguez initially because she was more comfortable
with appellant, and knew appellant could get her the cocaine. Finally, Yarbrough testified
that she believed Rodriguez was acting under appellant's control. Considering this
evidence in the light most favorable to the jury's verdict, we conclude that the evidence was
sufficient to allow a rational jury to find the essential elements of the offense alleged beyond
a reasonable doubt. (3) See Jackson, 443 U.S. at 319; Clewis, 922 S.W.2d at 132. 
Therefore, the evidence was legally sufficient to support the jury's verdict. 

 We next review the evidence for factual sufficiency. In doing so, we review all of the
evidence in a neutral light to determine whether a rational jury could have found appellant
guilty beyond a reasonable doubt. See Zuniga, 144 S.W.3d at 484. 

 In addition to evidence we have previously noted, Rodriguez testified that appellant
did not direct her to get the cocaine. She claimed that the transaction was her doing, and
pled guilty to the offense. However, the jury is the final judge of the weight and credibility
of the evidence. See Cain v. State, 958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997). We
will not consider a jury's findings unjust because the jury resolved conflicting views of the
evidence in favor of the State. Id. at 410. Hence, the jury could have resolved the
conflicting testimony by discounting Rodriguez's testimony minimizing appellant's role in
the transaction and believing the evidence portraying appellant as being in control of the
transaction. 

 Our review of the evidence leads us to conclude that (1) the evidence supporting the
verdict was not too weak to support a finding of guilt beyond a reasonable doubt, and (2)
the evidence contrary to the verdict was not so strong that the jury could not have found
appellant guilty beyond a reasonable doubt. See Zuniga, 144 S.W.3d at 484-85. That
being so, the evidence was factually sufficient. Id. 

 We overrule appellant's first issue. 

ISSUE TWO: INEFFECTIVE ASSISTANCE OF COUNSEL By his second issue, appellant contends that his trial counsel provided ineffective
assistance by failing to (1) object to prosecutorial remarks during voir dire and closing; (2)
object to remarks of the presiding judge; (3) request a directed verdict; (4) request a
mistrial; (5) request a new trial; and (6) request probation from the judge after the jury
returned its verdict on punishment. 

 A claim of ineffective assistance of counsel requires appellant to show (1) that
counsel's performance was so deficient that counsel was not functioning as the "counsel"
guaranteed under the Sixth Amendment, and (2) that counsel's deficient performance
prejudiced appellant, depriving him of a fair trial. Strickland v. Washington, 466 U.S. 668,
687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Hernandez v. State, 726 S.W.2d 53, 55
(Tex.Crim.App. 1986). To prevail in a claim of ineffective assistance of counsel, appellant
must prove both prongs of Strickland by a preponderance of the evidence. Tong v. State,
25 S.W.3d 707, 712 (Tex.Crim.App. 2000). 

 To successfully present an argument that counsel was ineffective because of a
failure to object to the State's questioning and argument, appellant must show that the trial
court would have committed error in overruling such objection. See Vaughn v. State, 931
S.W.2d 564, 566 (Tex.Crim.App. 1996) (en banc). Appellant does not contend that the trial
court would have erred in overruling an objection to the challenged prosecutorial
comments. He simply claims that the statements were manifestly improper. This
contention does not present anything for review. Id. 

 Further, although appellant claims that comments by the trial judge explaining why
he was sitting by assignment were prejudicial, he fails to cite supporting authority for his
contention or explain his failure to do so. See Tex. R. App. P. 38.1(h); Rocha v. State, 16
S.W.3d 1, 20 (Tex.Crim.App. 2000) (argument that fails to cite supporting authority
presents nothing for review). This contention presents nothing for review. 

 Appellant's proposition that trial counsel should have moved for a directed verdict
or new trial relies on the assumption that Yarbrough's testimony was inadequately
corroborated and that the evidence was legally and factually insufficient to support a guilty
verdict. However, we have previously determined that Yarbrough's testimony was
corroborated and that the evidence was sufficient to support the conviction. Hence,
appellant has not shown that he would have been entitled to a directed verdict or new trial
and that trial counsel's performance prejudiced his defense. See Charleston v. State, 33
S.W.3d 96, 101 (Tex.App.-Texarkana 2000, pet. ref'd). 

 Regarding trial counsel's failure to request a motion for mistrial or to request
probation from the trial judge after the jury's verdict, appellant does not demonstrate or
contend that there was a reasonable probability that either a mistrial or probation would
have been granted. He has not shown that but for counsel's action the result of the
proceeding would have been different. See McFarland v. State, 928 S.W.2d 482, 500
(Tex.Crim.App. 1996) (en banc); Miranda v. State, 993 S.W.2d 323, 329 (Tex.App.-Austin
1999, no pet.). 

 Appellant has failed to show prejudice from trial counsel's representation. Hence,
he has not met his burden to show ineffective assistance of counsel. See McFarland, 928
S.W.2d at 500. We overrule his second issue.

 Having overruled appellant's two issues, we affirm the judgment of the trial court.


 Phil Johnson

 Chief Justice

Do not publish. 
1. " 
 
 
 
 
 
 " -
 
2. 
 " "
3. 
 
 § 
 § 
 § 



d on the allocation of the burden of proof. 

 The trial court heard extensive testimony and admitted correspondence between
Darco and RAJ evidencing the dissension between RAJ's representative Tim Bhakta and
Darco personnel during construction. The trial court's findings of fact include the
unchallenged findings that "RAJ, owner of the hotel, acting through its agent, Bhakta,
egregiously interfered with the performance of the contract by DARCO," and "Tim Bhakta's
invasions and interference caused the project to be more expensive, the scope of work
more burdensome, [and] the project delayed, and disrupted DARCO's performance of its
contract and quality of performance by its subcontractors." 

 The court also found that the project was substantially completed on or about
November 25, 2002, and that Darco submitted its pay applications 11 and 12 on or about
February 18, 2003. Its findings further include the statements that "[p]ursuant to the
contract DARCO executed several punch lists before its construction supervisor was
ordered off the property by Defendants, at which time neither DARCO nor its
subcontractors could determine, inspect, investigate and perform warranty work on the
hotel," and that "after DARCO had completed construction and turned the hotel over to
RAJ, Bhakta and RAJ created new 'punch list' items as an excuse for not paying for
DARCO's substantial performance of the contract." 

 Assuming, without deciding, that Darco bore the burden of demonstrating that no
good faith dispute existed regarding its entitlement to payment for its pay applications 11
and 12, we find that, considering all the evidence, the trial court's apparent conclusion it
met that burden is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Rodriguez, 860 S.W.2d at 418; Cain, 709 S.W.2d at 176. We
overrule RAJ's third issue.

Darco's Appeal

 At trial, Darco sought additional consequential damages against RAJ for breach of
contract, which the trial court did not award. And, as noted, Darco asserted causes of
action against RAJ for intentional interference with prospective business relations and for
fraud. The trial court denied it recovery on those causes of action as well. In addition, the
trial court's judgment made no provision for post-judgment interest. Raising six issues,
Darco's appeal of the judgment challenges the trial court's failure to award it the additional
consequential damages it sought (issues two and three); failure to award it damages for
intentional interference with prospective business relations (issue four) and for fraud (issue
five); and failure to award it post-judgment interest (issue six). Darco's first issue contends
the trial court erred in failing to make the findings of fact Darco requested. 

Consequential Damages

 We begin with Darco's second and third issues on appeal. Darco contends the trial
court erred by not awarding it additional consequential breach of contract damages
because, Darco argues, it proved its entitlement to the damages as a matter of law. Darco
accordingly seeks rendition of judgment for the claimed amounts. Darco's argument
focuses on two areas in which it claims it suffered consequential damages: (1) delay
damages and (2) other foreseeable damages. Consequential damages result naturally,
but not necessarily, from a defendant's wrongful acts. Haynes & Boone v. Bowser Bouldin,
Ltd., 896 S.W.2d 179, 182 (Tex. 1995). Consequential damages must be foreseeable and
directly traceable to the wrongful act and result from it. Arthur Andersen, 945 S.W.2d at
816. 

 As Darco correctly notes, we review a trial court's fact findings under the same legal
and factual sufficiency standards applicable to jury findings. Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994). An appellant attacking the legal sufficiency of evidence
supporting an adverse finding on which it had the burden of proof must show on appeal
that a contrary finding was established as a matter of law. Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983). Darco's matter of law contention first requires examination of
the record for evidence supporting the court's finding, ignoring all evidence to the contrary. 
If no evidence appears to support the finding, we must then examine the entire record to
determine whether the contrary proposition is established as a matter of law. Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 690 (Tex. 1989); Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766
S.W.2d 264, 276 (Tex.App.-Amarillo 1988, writ denied). In this context, a proposition has
been established as a matter of law when a reasonable finder of fact could draw only one
conclusion from the evidence presented. See generally City of Keller v. Wilson, 168
S.W.3d 802, 814-16 (Tex. 2005). Here, the "contrary proposition" Darco must establish
encompasses both its entitlement to the consequential damages it sought at trial and the
amount of those damages. See Ponce v. Sandoval, 68 S.W.3d 799, 809
(Tex.App.-Amarillo 2001, no pet.) (tort damages); see also Manfredi v. Lubbock Hometel
Development Venture, 2000 WL 1639305 *5 (Tex.App.-Amarillo Nov. 1, 2000, no pet)
(citing Martin v. Warrent Miller Co., 639 S.W.2d 706, 707 (Tex.App.-Tyler 1982, no writ))
(in the event of a reversal and rendition, an appellate court cannot supply the amount of
appellant's damages). 

 RAJ does not point to evidence supporting the trial court's finding. It contends,
though, the evidence does not establish as a matter of law that Darco sustained the
claimed consequential damages. We agree with RAJ. 

 Darco claims the evidence established RAJ's wrongful acts caused 91 days of
construction delay, that Darco suffered damages of $18,200 for its construction
superintendent's salary during that period, and that Darco was entitled, in addition to its
daily construction fee of $1000, to compensation for Darco president Dale Smith's "extra
work" valued at $9687. The trial court's findings include the unchallenged finding that "RAJ
was responsible by its conduct for substantial delays in the construction of the hotel." The
court did not find that the RAJ-caused delays amounted to 91 days, however, and the
record does not conclusively establish that they did so. 

 Darco's claim of 91 days of construction delay was supported by the testimony of 
its secretary/treasurer Regetta Smith. She testified that she calculated the 91-day figure
by reviewing such items as reports from subcontractors and Darco's superintendent's
reports. The record also contains an exhibit Mrs. Smith prepared that summarizes her
testimony. The exhibit attributes 18 days of the 91-day delay to a change of construction
superintendent made necessary by the resignation of Darco's original superintendent. The
exhibit notes that the project "lost momentum" while the new superintendent was learning
Darco's procedures and the subcontractors. Attached to the exhibit are copies of reports
from the plumbing and electrical subcontractors, listing their lost time. 

 The trier of fact may choose to believe all, part, or none of the testimony of any
particular witness. In the Interest of R.D.S., 902 S.W.2d 714, 716 (Tex.App.-Amarillo
1995, no writ). The testimony of an interested witness like Mrs. Smith, even if
uncontradicted, does no more than raise an issue of fact to be determined by the trier of
fact unless that testimony is clear, direct and positive, and there are no circumstances in
evidence tending to discredit or impeach the testimony. McGalliard v. Kuhlman, 722
S.W.2d 694, 697 (Tex. 1986). It is clear that Mrs. Smith's calculation of the 91-day period
of delay required some interpretation on her part of the reports submitted by others. The
evidence presented did no more than raise an issue of fact for the trial court's resolution. 
Darco's claimed 91-day construction delay was not proven as a matter of law. Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998); Rodriguez, 860 S.W.2d at 418. 

 Darco also contends it established its entitlement to additional damages including
$207,000 in "administrative expenses," $2,766.03 in interest expenses for loans it took out
to maintain cash flow, $2,600 for attorney's fees it incurred while successfully defending
a suit against a subcontractor, and monies due for unpaid change orders. Again, we
disagree. Darco argues that it is entitled to the $207,000 administrative expenses to
compensate it for hours of work Dale and Regetta Smith devoted to addressing the
problems caused by RAJ's conduct, occupying what would otherwise have been productive
time. (9) But the evidence does not show that Darco paid, or was obligated to pay, the
Smiths the $207,000, or that the amount reflects any other measure of loss to Darco. 
Further, and like the claimed interest expense and attorney's fees, we do not find evidence
conclusively establishing that the claimed damages were foreseeable, directly traceable
to RAJ's wrongful acts and resulting from them. Arthur Andersen, 945 S.W.2d at 816. As
to its claim for unpaid change orders, Darco neither directs us to a provision in the contract
entitling it to such damages nor provides authority supporting the award of such an item
as consequential damages. Haynes & Boone, 896 S.W.2d at 182. Having examined the
entire record, we find the evidence does not establish Darco's entitlement to its claimed
consequential damages as a matter of law. Raw Hide, 766 S.W.2d at 276. We overrule
Darco's issue two. Our discussion of issue two makes unnecessary our consideration of
Darco's issue three, by which Darco contended the construction contract did not contain
a "no damage for delay" provision.

Interference With Prospective Business Relations 

 Darco next argues factually insufficient evidence supported the trial court's denial
of its claim for intentional interference with prospective business relations. (10)
 During
construction of the Holiday Inn Express, Darco was approached by a former customer
regarding the construction of a Days Inn hotel in Dumas, Texas. After negotiations, Darco
prepared a contract ready for signature, but the Dumas hotel owner ultimately decided to
use a different contractor. Darco alleges the Dumas hotel owner decided to use the other
contractor because of Tim Bhakta's derogatory comments about Darco. 

 The trial court findings state that Darco and the Dumas hotel owner "engaged in
serious negotiations resulting in a set of plans and specifications, costs estimates, and a
proposed contract as well as affirmative statements made to others that DARCO would
build said hotel." However, the district court concluded the evidence was factually
insufficient to establish a claim of intentional interference with the prospective business
relationship. 

 A party challenging on appeal the factual sufficiency of a finding on an issue on
which that party had the burden of proof at trial must demonstrate that the adverse finding
is against the great weight and preponderance of the evidence. Dow Chem. Co., 46
S.W.3d at 242; Raw Hide, 766 S.W.2d at 276. In considering such an appellate
contention, the reviewing court must consider and weigh all the evidence and may set
aside the finding only if the evidence is so weak or the finding is so against the great weight
and preponderance of the evidence that it is clearly wrong and unjust. Dow Chem., 46
S.W.3d at 242; see Maritime, 971 S.W.2d at 407 (court of appeals may set aside verdict
only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly
wrong and unjust). In our review, we may not pass upon the witnesses' credibility or
substitute our judgment for that of the trier of fact, even if the evidence would clearly
support a different result. Maritime, 971 S.W.2d at 407. 

 Darco emphasizes the testimony of its construction superintendent Billy Scott, who
testified that while the Dumas hotel owner was visiting the construction site in Lubbock,
Scott overheard Tim Bhakta say in the owner's presence that Darco was "screwing him,
ripping him off," Darco was "making money off the subs, making money of [sic] the vendors
. . . . doing crappy work," and he was going to sue Darco. Scott said Tim Bhakta made
similar statements about Darco to others in the "Indian community" as well as
representatives of the City of Lubbock. Scott also testified that he later had a conversation
with the Dumas hotel owner when he visited the Lubbock inn shortly before it was
completed. When, during that conversation, he asked the Dumas hotel owner what
happened to cause Darco to lose the Days Inn project, Scott said the owner responded,
"[t]he problems with Tim [Bhakta]." 

 Other testimony supports the trial court's rejection of Darco's intentional interference
claim. Tim Bhakta testified that he "never talk[ed] bad stuff" about Darco and instead he
"already recommend[ed]" Darco. Roger Narsai, vice president of Shambu, testified the
Dumas hotel owner's wife did not like Darco's work on previous construction projects and
that is why Darco was not awarded the Days Inn hotel project. 

 The Dumas Days Inn owner did not testify. As finder of fact, the trial court was not
required to give credence or weight to the testimony of the witnesses who provided
evidence concerning the owner's possible reasons for selecting another contractor.
Maritime, 971 S.W.2d at 407; In the Interest of R.D.S., 902 S.W.2d at 716. Its failure to
find that Darco's intentional interference claim was supported by the evidence was not
against the great weight and preponderance of the evidence presented. Ash, 54 S.W.3d
at 414-15; Dickerson v. DeBarbieris, 964 S.W.2d 680, 683 (Tex.App.-Houston [14th Dist.]
1998, no pet.). 

Fraud

 Through its fifth issue, Darco contends the trial court's rejection of its fraud claim
against RAJ was against the great weight and preponderance of the evidence. Darco
argues the evidence established that RAJ fraudulently induced it to enter the construction
contract by misrepresenting the quality and character of the plans and by concealing from
Darco a letter from Holiday Inn specifying certain required architectural features. 

 The elements of fraud are: (1) a material representation was made; (2) the
representation was false; (3) when the representation was made, the speaker knew it was
false or made it recklessly without any knowledge of the truth and as a positive assertion;
(4) the speaker made the representation with the intent that the other party should act upon
it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered
injury. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001), citing Formosa Plastics
Corp. v. Presidio Engrs. & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998). 

 Darco cites the trial court's findings of fact, which include the finding that RAJ made
false representations to Darco regarding the adequacy of the plans and specifications and
that "DARCO relied upon the project plans and Defendants' representations concerning
the adequacy of the plans and specifications." As noted, we construe the trial court's
findings in a manner that supports its judgment. Rodriguez, 860 S.W.2d at 418. Although
the trial court found Darco relied on RAJ's misrepresentations about the plans, it did not
find RAJ knew they were false at the time they were made, or made them recklessly
without any knowledge of their truth. FirstMerit Bank, 52 S.W.3d at 758. In support of that
element, Darco points to the evidence that, because of the original contractor's failure to
complete the job, RAJ was facing imminent deadlines from Holiday Inn and was over
budget at the time it made its deal with Darco. Darco concludes it is "difficult to deny" that
RAJ knew of its deception of Darco. We cannot agree a contrary conclusion is so against
the great weight and preponderance of the evidence that it is clearly wrong and unjust. 
Dow Chem., 46 S.W.3d at 242. 

 The trial court also found RAJ withheld the Holiday Inn letter from Darco until after
the contract was signed. Again, however, the court did not find that Darco suffered injury
because it did not see the letter until after the contract was signed. As RAJ points out, the
primary feature discussed in that letter was that Holiday Inn required coffered ceilings in
the hotel. The evidence shows that, despite the letter, Darco did not build coffered ceilings
in the hotel. (11) The great weight and preponderance of the evidence does not demonstrate
that withholding the letter caused injury to Darco. Dow Chem., 46 S.W.3d at 242.

Additional Findings of Fact

 Both Darco and RAJ timely filed requests for findings and conclusions, and the trial
court entered findings of fact and conclusions of law. Darco and RAJ then timely
requested additional findings and conclusions. The trial court denied both requests by a
written order that stated the original findings and conclusions "decide all the material
disputed issues of fact and announce a basis on which the court has rendered judgment
. . . ." 

 Rule of Civil Procedure 298 requires the trial court to file, on request, additional
findings and conclusions that are appropriate. The failure to make appropriate (12) additional
findings of fact and conclusions of law after a timely request requires reversal unless the
record affirmatively shows the complaining party has not suffered an injury, but if the record
indicates the party did not suffer injury from the court's failure to make the requested
additional findings, reversal is not required. Flanary v. Mills, 150 S.W.3d 785, 792
(Tex.App.-Austin 2004, pet. denied); Johnston v. McKinney Am., Inc., 9 S.W.3d 271, 277
(Tex.App.-Houston [14th Dist.] 1999, pet. denied). In that regard, if the refusal to file
additional findings does not prevent a party from adequately presenting an argument on
appeal, there is no reversible error. Flanary, 150 S.W.3d at 792, citing ASAI v. Vanco
Insulation Abatement, Inc., 932 S.W.2d 118, 122 (Tex.App.-El Paso 1996, no writ). 

 Darco's requested additional findings and conclusions sought further information
about the trial court's reasons for failing to award it recovery on its intentional interference
and fraud claims. It asks that we abate the appeal and remand the cause, directing the
trial court to enter findings and conclusions on the elements of those claims the court found
wanting. Johnston involved a contention like that made by Darco here. Because the trial
court did not rule on their requested amended findings and conclusions, the Johnston
appellants argued they could not ascertain on what facts and grounds the trial court based
its judgment denying their cause of action. 9 S.W.3d at 277. The court of appeals rejected
the argument, finding no injury from the failure to file the findings, because, among other
reasons, the appellants did not show the absence of the findings prevented their adequate
presentation of their complaint on appeal. Id.

 We find the holding applicable to Darco's contention. The trial court's original
findings of fact and conclusions of law addressed Darco's intentional interference and fraud
causes of action separately. Darco has presented appellate issues contending that the
court's failure to sustain the causes of action was against the great weight and
preponderance of the evidence, and the complete appellate record has permitted our
review and disposition of those issues. Assuming Darco's requested additional findings
and conclusions were appropriate, a question we do not address, we find Darco has
suffered no injury from the trial court's failure to file them. Flanary, 150 S.W.3d at 792;
Johnston, 9 S.W.3d at 277. Darco's first issue is overruled.Postjudgment Interest

 By its sixth issue, Darco contends the trial court erred in making no award of
postjudgment interest when Darco was awarded money damages for breach of contract. 
Section 304.001 of the Texas Finance Code states a "money judgment of a court in this
state must specify the postjudgment interest rate applicable to that judgment." We agree
with Darco that postjudgment interest is mandated by statute, and is recoverable even if
the trial court's judgment does not mention it. See Jarrin v. Sam White Oldsmobile Co.,
929 S.W.2d 21, 25 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (discussing TEX. REV.
Civ. STAT. art. 5069-1.05, the predecessor statute of section 304.001); see also Tex. Fin.
Code Ann. § 304.003 (Vernon 2006) (providing postjudgment interest rates), § 304.005(a)
(stating general rule for accrual of postjudgment interest on money judgment). 
Accordingly, we sustain Darco's sixth issue.

 Having overruled RAJ's issues on appeal, and sustained only Darco's sixth issue,
we modify the trial court's judgment to include an award of postjudgment interest at the
Finance Code § 304.003 rate applicable to the judgment, and affirm the judgment as
modified. 



 


 James T. Campbell

 Justice


 

 

 

 


 


 











 
1. Don H. Reavis, Justice (Ret.), was on the panel that heard oral argument. He did
not participate in the decision. Tex. R. App. P. 41.1(b). 
2. RAJ Partners, LTD, a limited partnership, and Shambu Enterprises Corp., its
general partner, were the original defendants. Thakor (Tim) Bhakta, Shambu's president,
later was added as a defendant. 
3. The construction contract defines "substantial completion" as follows:


 [A]ll systems and construction included in the Work are completed and operational
as designed, all designated or required governmental inspections and certifications
have been made and posted, any designated instruction of Owner's personnel in
the operation of systems has been completed, and all final finishes within the
Contract Documents are in place. In general, the only remaining Work shall be
minor in nature, so that the Owner could occupy the building on that date and the
completion of the Work by the Contractor would not materially interfere or hamper
the Owner's normal business operations. As a further condition of Substantial
Completion acceptance, the Contractor shall certify that all remaining Work, the
same being solely of a "punch list" nature, will be completed within thirty (30)
consecutive calendar days. 
4. Article 11 of the contract provides:

 

 Installation as Acceptance. Installation by the Owner of Owner Provided Aspects
prior to "punch list" items being completed by the Contractor constitutes acceptance
by the Owner for these rooms and relieves the Contractor of any further
construction responsibility for the rooms occupied, except for warranty performance
work. 

5. It is undisputed that the City of Lubbock issued a certificate of occupancy for the
hotel.
6. Evidence demonstrates that some of the brickwork on the building is noticeably
crooked and uneven. The joints between bricks do not line up vertically, giving a wave-like
appearance to parts of the outside of the building. Brickwork on an outside corner of the
building has a slight bulge and is described as out of plumb by two inches. Individual bricks
in some places protrude slightly from the face of the wall.
7. As will be discussed more fully later in this opinion, in addition to its breach of
contract and lien foreclosure claims, Darco asserted tort claims including fraud and
intentional interference with a prospective business relationship. 
8. The construction contract provided for interest on past due payments of 1% per
month.
9. Darco's exhibit showing the calculation of the $207,000 attributes 1032 hours of
Dale Smith's time at an hourly rate of $125 and 1560 hours of Regetta Smith's time at $50
per hour. The exhibit states that it reflects "administrative time necessary for work on law
suit." 
10. The elements of a claim for tortious interference with a prospective business
relationship include:


 (1) a reasonable probability that the parties would have entered into a contractual
relationship;

 (2) an "independently tortious or unlawful" act by the defendant that prevented the
relationship from occurring;

 (3) the defendant did such act with a conscious desire to prevent the relationship
from occurring or he knew that the interference was certain or substantially certain
to occur as a result of his conduct; and

 (4) the plaintiff suffered actual harm or damage as a result of the defendant's
interference. 


Ash v. Hack Branch Distributing Co., Inc., 54 S.W.3d 401, 414-15 (Tex.App.-Waco 2001,
pet. denied).

11. The record contains some evidence Holiday Inn at the time of trial still was
asserting that the ceilings must be rebuilt in compliance with its specifications, but that
eventual outcome is far from clear on this record. 
12. See Kirby v. Chapman, 917 S.W.2d 902, 909 (Tex.App.-Fort Worth 1996, no writ)
(listing limitations on trial court's duty to make additional findings).