# NO. 12-18-00281-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF B.L.W.,* | § | *APPEAL FROM THE* |
| *A CHILD* | § | *COUNTY COURT AT LAW* |
| | § | *HOUSTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Brandon Lynn Walker appeals the trial court's final order in a suit affecting the parent-child relationship. On appeal, he contests the legal and factual sufficiency of the custody and child support orders, and the trial court's failure to grant his motion for new trial, request for additional findings of fact and conclusions of law, and motion to suspend judgment. We affirm in part and remand in part.

## BACKGROUND

Brandon Lynn Walker is the father and Kamena Taquay Handsborough is the mother of B.L.W. On August 23, 2017, Brandon filed an original petition in suit affecting the parent-child relationship, stating that it was in the child's best interest for him to be appointed sole managing conservator of the child and that Kamena be obligated to pay child support. In temporary orders filed on August 31, Brandon was appointed temporary sole managing conservator of B.L.W. and Kamena was appointed temporary possessory conservator. Brandon was granted the exclusive right to designate the primary residence of the child. The temporary order granted Kamena possession of the child for one day each week.

Kamena filed an original answer and counterpetition in suit affecting the parent-child relationship, and a motion to modify the temporary order. After the hearing on the motion to modify, the trial court ordered that both parents be appointed temporary joint managing conservators and that Kamena be granted visitation three days each week. The trial court requested

that the parties' attorneys work out a visitation schedule. The record does not include an order on Kamena's motion to modify. On June 7, 2018, the trial court held a final hearing. On June 10, the trial court filed an order in suit affecting the parent-child relationship, appointing Brandon and Kamena as joint managing conservators of the child. Kamena was granted the exclusive right to designate the primary residence of the child without regard to geographical location. Brandon was granted "extended" standard possession of the child. Further, Brandon was obligated to pay child support and reimbursement of fifty percent of Kamena's health insurance premiums each month.

On August 6, Brandon filed a motion for new trial and the motion was overruled by operation of law. After a request and a notice of past-due findings of fact and conclusions of law, the trial court filed findings of fact and conclusions of law. Subsequently, Brandon filed a motion to suspend judgment and a request for additional findings of fact and conclusions of law. The trial court denied Brandon's motions. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's order for conservatorship or support under an abuse-of-discretion standard. *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.–Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (child support); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (conservatorship, control, possession, and access). We will not disturb the trial court's ruling unless a clear abuse of discretion is shown. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.–Austin 2006, pet. denied). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.–Austin 2014, no pet.) (quoting *In re Marriage of Jeffries*, 144 S.W.3d 636, 638 (Tex. App.–Texarkana 2004, no pet.)).

When reviewing for abuse of discretion, "legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion." *Id.* (citing *Zeifman*, 212 S.W.3d at 587); *In re Davis*, 30 S.W.3d 609, 614 (Tex. App.–Texarkana 2000, no pet.). In considering whether the trial court abused its discretion, we determine (1) whether there was sufficient evidence upon which to exercise its discretion and if there was, (2) whether the application of its discretion was erroneous. *See Zeifman*, 212 S.W.3d at 588 (citing *Echols v. Olivarez*, 85 S.W.3d 475, 477–78 (Tex. App.–Austin

2

2002, no pet.)). We conduct the applicable sufficiency review with regard to the first question. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We then proceed to determine whether, based on the evidence, the trial court made a reasonable decision. *Moroch*, 174 S.W.3d at 857. If some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.).

"When the appellate record includes the reporter's and clerk's records, ... the trial court's findings, express or implied, are not conclusive and may be challenged on appeal for evidentiary sufficiency." *Lopez v. Rendsland*, No. 03-10-00084-CV, 2010 WL 4053787, at *5 (Tex. App.–Austin Oct. 12, 2010, no pet.) (mem. op.) (citing *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003)). Further, a trial court's findings of fact are reviewed by the same standards as a jury verdict. *See id.*; *Avila v. Avila*, No. 03-05-00030-CV, 2006 WL 2986225, at *4 (Tex. App.–Austin Oct. 20, 2006, no pet.) (mem. op.). However, the trial court has wide discretion in determining what is in the best interest of the child and its findings will not be disturbed absent an abuse of discretion. *Avila*, 2006 WL 2986225, at *4 (citing *Gillespie*, 644 S.W.2d at 451; *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.–Austin 2003, no pet.)).

Finally, in a trial to the bench, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.–Austin 2012, no pet.); *see City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn*, 433 S.W.3d at 823 (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.–Houston [14th Dist.] 2009, no pet.)). Therefore, we defer to the trial court's judgments that involve credibility determinations and its factual resolutions affected by those determinations. *Id.* at 823-24.

## CONSERVATORSHIP

In his first issue, Brandon contends that the trial court abused its discretion in determining custody. In his argument, he does not distinguish whether he is challenging the appointment of both parents as joint managing conservators or if he is challenging the appointment of Kamena as

3

the parent with the exclusive right to establish the primary residence of the child. We will consider both contentions.

**Applicable Law**

The best interest of the child is the controlling factor in making a determination regarding conservatorship and terms and conditions of conservatorship. TEX. FAM. CODE ANN. § 153.002 (West 2014). The trial court is given wide latitude in determining the best interest of a minor child. *See In re M.R.*, No. 07-13-00440-CV, 2014 WL 2591616, at *6 (Tex. App.–Amarillo May 9, 2014, no pet.) (mem. op.) (citing *Gillespie*, 644 S.W.2d at 451).

In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) whether the child is fearful of living in or returning to the child's home; (4) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (6) whether the child's family demonstrates adequate parenting skills; and (7) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (5), (7), (11), (12), (13).

**Analysis**

In considering whether the trial court abused its discretion in appointing both parents as joint managing conservators and appointing Kamena as the parent with the exclusive right to designate the primary residence of the child, we must determine whether there was sufficient evidence upon which to exercise its discretion. *See Coburn*, 433 S.W.3d at 823; *Zeifman*, 212

S.W.3d at 588. The evidence shows that the incident which led to Brandon filing a petition began in August 2017, when B.L.W. was approximately eighteen months old. Kamena stated that she was stressed, mad, hot-headed, and "tired of doing everything by [herself]." She characterized her behavior that night as a "minor breakdown." Kamena stated that she could never get Brandon to take care of B.L.W. even when he was not working, or assist her in paying for child care. On that Friday night, she asked Brandon to take care of the child and when he refused, went to his location to continue their argument. According to Brandon, he could not keep the child on Friday night because he was supposed to haul hay on Saturday morning. He stated that he had earlier agreed to take care of the child on Saturday. Their argument escalated and Brandon called law enforcement.

According to Kamena, both parents stated that they did not want to take care of the child. After law enforcement called the Department of Family and Protective Services (the "Department"), Brandon agreed to take the child rather than have the Department take the child into custody. Kamena stated that her purpose was not to effectively give custody of the child to Brandon. This evidence supports the trial court's findings of fact that Kamena requested Brandon's assistance in caring for the child, that he refused, and that Brandon agreed to care for the child after the Department threatened to take custody of the child.

At trial, Kamena testified that she lives with her ten year old daughter in a two bedroom apartment. B.L.W. usually sleeps in a toddler bed in her bedroom. She is employed at the University of Texas Medical Branch (UTMB) and works every other weekend and three days a week. She is waiting for UTMB to hire another person so that she can begin working day shifts. When Kamena is working, her father would take care of the child. Kamena stated that her father and two brothers are her child's male role models.

Kamena testified regarding Brandon's history with B.L.W. She stated that Brandon had no history of paying child support nor did he establish a regular pattern of paying child support during the first eighteen months of the child's life. Before August 2017, Kamena's aunt provided childcare for B.L.W. in the amount of $80.00 every week. She stated that Brandon paid her aunt once just prior to the August 2017 incident, but during the motion to modify hearing, stated that Brandon paid her approximately $40.00 to $50.00 per month for daycare. Brandon disputed Kamena's testimony, stating that he paid Kamena's aunt every two weeks. He acknowledged that he did not pay child support, but that he took Kamena to the hospital before B.L.W.'s birth and

5

bought strollers, a changing station, a car seat, food, and diapers. This evidence supports the trial court's findings of fact that Brandon infrequently paid child support while the child was with Kamena.

Kamena also testified regarding Brandon's relationship with B.L.W. She said that prior to the August 2017 incident, she offered, "multiple times," for Brandon to look after B.L.W. overnight, but he always refused. She stated that Brandon had B.L.W. overnight twice prior to the August 2017 incident. The first time was the night after B.L.W.'s first birthday party which Brandon failed to attend. The next day, B.L.W.'s actual birthday, Kamena confronted Brandon about not coming to B.L.W.'s birthday party. Brandon said that he had to work and, after an argument, agreed to take care of the child that night. The next time B.L.W. spent the night with Brandon was in April 2017, when Kamena attended a wedding overnight in Houston. Brandon kept B.L.W. overnight and took the child to her mother's house before work that next morning.

Kamena stated that she believed it was important for B.L.W. to have a relationship with both his mother and father and to spend time with both of them. According to Brandon, he did not see the child a "whole lot," but he did see him and take care of him. He could not recall how many times he kept B.L.W. overnight during the summer of 2017, but he stated it was about once a month or a weekend. This evidence supports the trial court's findings of fact that Brandon infrequently visited the child while in Kamena's care.

Regarding the incident in August 2017, Kamena stated that she "learned her lesson," and if she becomes stressed again, she will contact her family or friends to support her. She realized that she needed someone to talk to in order to "bounce things off of." Kamena stated that she has friends or a pastor to talk to in order to prevent another "breakdown." No other incident has occurred since that date and she is not taking any medications.

Since Brandon has had primary custody of B.L.W., Kamena complained that Brandon did not keep her informed about B.L.W.'s health. She said that Brandon did not consult her about medications prescribed for B.L.W. or about an emergency room visit until after it occurred. When confronted, Kamena testified that Brandon described the emergency room visit as "not a big[] deal" and that he had it "under control." The reason for the emergency room visit was that B.L.W. fell and chipped or "jammed" a tooth. Brandon stated that the emergency room visit was not life threatening and that he texted Kamena while he was at the hospital.

6

Brandon testified that he has other children besides B.L.W., two daughters who are ten and eleven years old. They are the children of his fiancé with whom he has been in a relationship for approximately fourteen years. His fiancé lives with him although she also lives with her mother. Brandon lives in a three bedroom house and B.L.W. has his own bedroom. However, there was testimony that Brandon may be the father of another girl, his fiancé's oldest daughter, and that he might be the father of another two year old boy. He stated that he did not have proof that he was the father of the other boy even though he attempted to obtain paternity tests. Nor does he pay child support for that child. This evidence supports the trial court's finding of fact that Brandon has other children not included in this suit and for whom he has not established paternity nor pays child support.

Brandon testified that he is employed with Midway Oil and will be working twelve hour shifts, from 6:00 a.m. to 6:00 p.m., five days a week. He will also work for Mosley Ranch about sixteen hours a week on his days off or, during the summer, after work. According to Brandon, his fiancé will be with his child if he cannot. He admitted that his fiancé or his father would be providing daycare for B.L.W. while he is working twelve hour shifts during the week and working on the weekends.

However, Brandon believed it was important that he raise B.L.W. because he said that Kamena, as a woman, could not "raise up a man." To be a strong male role model, Brandon stated that one must be God-fearing and have principles and moral values. Further, Brandon believed that he should raise B.L.W. because his son needed to have God first and as a "black African American" know male structure "only." According to Brandon, B.L.W. should be raised by him because he had structure and the child needed a male figure in his life. Brandon also stated that he was raised by both parents in the house, i.e., the "right way." He pointed out that B.L.W. was not being raised right by Kamena, citing the August 2017 incident, and noted that Kamena did not carry her father's surname, was not married, and that he was her second "baby daddy."

In rendering its decision, the trial court stated that one factor was that Kamena took responsibility for her actions during the incident in August 2017, but Brandon did not. According to the court, both parents should have taken responsibility for refusing to take care of the child. From this evidence, we believe that the trial court had sufficient evidence on which to base its decision. *See Coburn*, 433 S.W.3d at 823; *Zeifman*, 212 S.W.3d at 588.

7

With respect to whether the trial court abused its discretion by appointing Kamena as the joint managing conservator with the right to designate the primary residence of B.L.W., we note that the best interest of the children shall always be the primary consideration of the court in determining issues of conservatorship of and access to the child. TEX. FAM. CODE ANN. §153.002; *Lenz v. Lenz*, 79 S.W.3d 10, 18-19 (Tex. 2002). The court heard evidence from each parent about the faults of the other. Brandon argues in his brief that the trial court failed to consider that Kamena's conduct rose to a more severe level than was perceived and that the trial court should have processed the matter as one of severe concern for the child and his safety. The trial court was presented with accounts from both parents regarding the August 2017 incident. The parents' accounts of that incident were basically the same although Brandon denied saying that he did not want the child. However, he admitted that he refused to help Kamena take care of the child that night.

As the sole judge of the credibility of the witnesses, the trial court was free to disbelieve Brandon's view that Kamena was a danger to the child and was free to discern that only one parent took responsibility for the incident in August 2017, i.e., Kamena. There was no evidence of any abuse or neglect to the child by Kamena, who took care of the child for eighteen months without complaint from Brandon. Nor had he complained of any neglect or abuse by Kamena since the August 2017 incident. The evidence showed that Kamena had a two bedroom apartment, arranged for child care while she was at work, steady employment, and a supportive family. The evidence also showed that prior to the August 2017 incident, Brandon rarely paid child support or cared for the child. Brandon also admitted that his fiancé or father would be caring for the child while he was working twelve hour shifts during the week and working on the weekends. The trial court was also free to discount the fact that Brandon did not believe that Kamena, as a woman, was able to raise B.L.W. to be a man or that Kamena's background prevented her from raising B.L.W. in the "right way."

Viewing the record as a whole, we cannot say that the trial court abused its discretion by appointing Kamena as the joint managing conservator with the right to designate B.L.W.'s primary residence. *See Gillespie*, 644 S.W.2d at 451. There was sufficient evidence upon which the trial court exercised its discretion, as demonstrated by our discussion of the evidence contained in the record. *See Coburn*, 433 S.W.3d at 823; *In re A.B.P.*, 291 S.W.3d at 95. Based on that evidence, we conclude that the trial court's decision was reasonable. *See Moroch*, 174 S.W.3d at 857. Some

8

evidence of a substantive and probative character exists to support the trial court's decision that the appointment of Kamena as the joint managing conservator with the right to designate the primary residence is in the best interests of the child. *See* TEX. FAM. CODE ANN. § 153.002; *Lenz*, 79 S.W.3d at 899; *Gillespie*, 644 S.W.2d at 451; *In re C.C.J.*, 244 S.W.3d at 917. Accordingly, we overrule Brandon's first issue.

## CHILD SUPPORT

In his second issue, Brandon argues that the trial court abused its discretion in awarding child support not calculated in accordance with the applicable statute. Further, he contends that the trial court failed to provide the required statutory findings of the variance in the child support guidelines or address that variance in the findings of fact and conclusions of law. Brandon also argues that the trial court considered a child from whom paternity was not established regarding Brandon in determining child support.

**Applicable Law**

Texas Family Code Chapter 154 governs child support proceedings and sets forth guidelines to apply in determining an equitable amount of child support. *See* TEX. FAM. CODE ANN. §§ 154.001–.309 (West 2014 & Supp. 2018). Chapter 154 instructs that the trial court "shall calculate net resources for the purpose of determining child support liability as provided by this section." *Id.* § 154.062(a) (West Supp. 2018). In assessing child support, the trial court must calculate net resources for the purposes of determining child support liability. TEX. FAM. CODE ANN. § 154.062(a), (b) (West Supp. 2018); *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Texas Family Code section 154.129 entitled "Alternative Method of Computing Support for Children in More than One Household," provides that if one child is before the court and the obligor has two other children for whom he has a duty of support, the obligor should pay child support in the amount of sixteen percent of his net resources. TEX. FAM. CODE ANN. § 154.129 (West 2014).

The court shall make findings regarding whether the application of the guidelines would be unjust or inappropriate if (1) a party files a written request with the court before the final order is signed, but not later than twenty days after the date of rendition of the order; (2) a party makes an oral request in open court during the hearing; or (3) the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines under Sections

154.125 or 154.129 of the Texas Family Code. TEX. FAM. CODE ANN. § 154.130(a)(b) (West Supp. 2018).

**Analysis**

At trial, Brandon testified that he was employed by Midway Oil and was paid approximately $1,100.00 to $1,200.00 per week. He also had a second job on the weekends or in the evenings. Brandon testified that he would probably earn from $400.00 to $500.00 per week at his second job. The trial court found that Brandon's child support would be based on B.L.W. being the "third child," and the lower of the two estimated amounts that Brandon stated he was paid per week, i.e., $1,100.00 and $400.00. The trial court requested that the parties' attorneys "figure[] out" the percentages and the amount of child support. Thereafter, in the final order, the trial court ordered that Brandon pay child support in the amount of "seven hundred ninety-three dollars and eighty-nine cents ($820.98) per month." In its findings of fact, the trial court found that Brandon was ordered to pay the amount of $820.98 per month in child support.

Regarding Brandon's complaints, we first note that according to Texas Family Code Section 154.130(a), Brandon did not request that the trial court make findings regarding whether the application of the guidelines would be unjust or inappropriate within twenty days after the rendition of the final order. *See* TEX. FAM. CODE ANN. § 154.130(a). Thus, in order to obtain findings required by Section 154.130(b), the amount of child support ordered by the trial court would have to vary from the amount computed by applying the percentage guidelines under Sections 154.125 or 154.129 of the Texas Family Code. *See id.*

However, we cannot determine if the amount of child support ordered varied from the guidelines because the final order directed Brandon to pay monthly child support in two different amounts. We cannot determine the proper amount of monthly child support because the trial court's findings of fact did not calculate the child support in relation to Brandon's monthly net resources. Further, from this court's calculation using Section 154.129 of the Texas Family Code and its method of determining child support, Brandon's monthly income from the record of approximately $6,000.00 per month would result in a child support calculation of $960.00. Because the trial court ordered Brandon to pay monthly child support in two amounts and neither amount was supported by the evidence, the trial court erred in calculating Brandon's monthly child support. Accordingly, we sustain Brandon's second issue regarding the calculation of child support.

10

In his third issue, Brandon argues that the trial court abused its discretion by failing to grant his motion for new trial.

**Standard of Review**

The disposition of a motion for new trial is within the trial court's sound discretion. *Stein v. Meachum*, 748 S.W.2d 516, 517 (Tex. App.—Dallas 1988, no writ); *see also* *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Bank One, Texas, N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992). We review a trial court's denial of a motion for new trial for abuse of discretion, whether the denial is by court order or by operation of law. *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *see also* *Soto v. Gen. Foam & Plastics Corp.*, 458 S.W.3d 78, 81 (Tex. App.—El Paso 2014, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). When, as here, the motion for new trial was overruled by operation of law, "the issue is whether the trial court abused its discretion by not granting the motion for new trial and allowing the motion to be overruled by operation of law." *Continental Carbon Co. v. Sea-Land Serv., Inc.*, 27 S.W.3d 184, 187 (Tex. App.—Dallas 2000, pet. denied).

**Analysis**

In his motion for new trial, Brandon requested a new trial because he was prevented, "due to no fault of his own," from introducing additional witnesses and evidence that if presented, would have resulted in a "dramatically different" outcome. At the final hearing, the trial court noted that Brandon only listed himself as a potential witness during pretrial discovery. Therefore, Brandon was unable to call any other witnesses. Brandon's motion for new trial failed to state the testimony the absent witnesses could have provided and was not accompanied by any affidavits or other showing under oath setting forth any testimony the missing witnesses could have provided. *See* *Price v. State*, No. 14-96-00982-CR, 1999 WL 516089, at *1 (Tex. App.—Houston [14th Dist.] Jul. 22, 1999, pet. ref'd) (op.). Nor did he request a hearing on his motion.

In his brief, Brandon states that his motion for new trial in a bench trial appeared to be "unreviewable," citing *In re United Scaffolding, Inc.*, 377 S.W.3d 685 (Tex. 2012). However, he sought this court's "mercy" in seeking a chance to bring forth witnesses that were not able to testify. Because Brandon did not show how the missing witnesses' testimony or evidence could

have "dramatically" changed the outcome of his case by affidavit or hearing, we cannot say that the trial court abused its discretion by allowing his motion for new trial to be overruled by operation of law. *See Continental Carbon Co.*, 27 S.W.3d at 187. Accordingly, we overrule Brandon's third issue.

**ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In his fourth issue, Brandon contends that the trial court erred in not granting his motion for additional findings of fact and conclusions of law.

**Applicable Law**

After the court files original findings of fact and conclusions of law, a party may request specified additional or amended findings or conclusions. TEX. R. CIV. P. 298. The court must then file any additional or amended findings or conclusions that are appropriate. *Id.*; *see Hunter v. NCNB Tex. Nat'l Bank*, 857 S.W.2d 722, 727 (Tex. App.—Houston [14th Dist.] 1993, writ denied). The trial court, however, is not required to make additional findings and conclusions that relate merely to evidentiary matters or that are aimed at tying down the court's reasoning rather than its conclusions. *Stuckey Diamonds, Inc. v. Harris Cty. Appraisal Dist.*, 93 S.W.3d 212, 213 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In other words, additional findings are not required if "[t]he original findings of fact and conclusions of law properly and succinctly relate [to] the ultimate findings of fact and law necessary to apprise [the party] of adequate information for the preparation of his or her appeal." *In re Marriage of Morris*, 12 S.W.3d 877, 885-86 (Tex. App.—Texarkana 2000, no pet.) (citing *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ) (quoting *Balderama v. Western Cas. Life Ins. Co.*, 794 S.W.2d 84, 89 (Tex. App.—San Antonio 1990), *rev'd on other grounds*, 825 S.W.2d 432 (Tex. 1991))). If the record shows the complaining party did not suffer injury from the court's refusal to file additional or amended findings of fact or conclusions of law, reversal is not required. *Johnson v. McKinney Am., Inc.*, 9 S.W.3d 271, 277 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Injury is established when the refusal prevents adequate presentation of the matter being complained of on appeal. *Id.* Particularly when requested findings cover uncontested facts, there is no injury to the movant when the court denies such requests. *See Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 550 (Tex. App.—Houston [1st Dist.] 1994, no writ).

**Analysis**

After Brandon requested findings of fact and conclusions of law, the trial court responded and filed its findings of fact and conclusions of law. On October 4, 2018, Brandon requested additional findings of fact and conclusions of law, objecting to some portions of the trial court's findings of fact and conclusions of law. Among the additional findings of fact that Brandon proposed was a finding that Kamena had two breakdowns, that the court considered a paternity issue regarding another child, and that the trial court allowed the parties' counsel to assume its role in calculating child support. Brandon also proposed additional conclusions of law that the trial court's determination of child support was not in alignment with the statutory provisions of Texas law and that it impermissibly based its final order on a paternity issue that was not before the trial court.

In its order denying Brandon's motion for additional findings of fact and conclusions of law, the trial court noted that Brandon raised a concern regarding the mathematical determination of child support for the first time. The trial court stated that the amount of child support was presented to the court as an agreed amount and, if there was error, it should have been the subject of a timely motion for new trial. In his brief, Brandon requested that this court "deny the presumption given to the [trial] court's findings of facts and conclusions of law" and engage in an independent review of his additional findings. He further contends that all of his claims in his request for additional findings of fact and conclusions of law reflect the errors in the trial court's findings of fact and conclusions of law.

As noted above, a trial court is not required to make additional findings of fact and conclusions of law if the original findings and conclusions "properly and succinctly relate [to] the ultimate findings of fact and law necessary to apprise [the party] of adequate information for the preparation of his or her appeal." *In re Marriage of Morris*, 12 S.W.3d at 885-86; *Finch*, 825 S.W.2d at 221. Here, Brandon requested additional findings of fact and conclusions of law but did not show that he was injured because the trial court refused his request to file additional findings regarding Kamena's other "breakdown," the child support calculation, or the paternity issue. *See Johnson*, 9 S.W.3d at 277. Nor did he show that the trial court's refusal prevented him from an adequate presentation of the matters being complained of on appeal. *Id.* Because Brandon could not show that he was injured as a result of the denial of his motion, the trial court did not

13

abuse its discretion in refusing to file additional findings of fact and conclusions of law. Accordingly, we overrule Brandon's fourth issue.

**MOTION TO SUSPEND JUDGMENT**

In his fifth issue, Brandon argues that the trial court abused its discretion in failing to grant his motion to suspend judgment.

**Standard of Review and Applicable Law**

We review a trial court's decision whether to suspend enforcement of an order under an abuse of discretion standard. *Wright v. Wright*, 867 S.W.2d 807, 817 (Tex. App.—El Paso 1993, writ denied) (citing *Morris v. Morris*, 654 S.W.2d 789, 790–91 (Tex. App.—Tyler 1983, no writ)). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *See In re E.L.T.*, 93 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Section 109.002(c) of Texas Family Code provides that an appeal from a final order, with or without a supersedeas bond, does not suspend the order unless suspension is ordered by the court rendering the order. TEX. FAM. CODE ANN. § 109.002(c) (West Supp. 2018). The appellate court, on a proper showing, may permit the order to be suspended, unless the order provides for the termination of the parent-child relationship in a suit brought by the state or a political subdivision of the state permitted by law to bring the suit. *Id.* Thus, unless either the trial court or this Court orders suspension of the order, the order cannot be suspended even if an appellant posts a supersedeas bond. We need only determine whether the trial court erred in refusing to suspend enforcement of the order and, if not, whether we should suspend enforcement.

**Analysis**

In his motion, Brandon complains that the trial court's calculation and factors used in reaching the child support amount was not in "alignment" with the law, that the trial court determined custody based on an impermissible issue of a child for whom neither party asserted paternity, and that there was confusion as to whether the hearing on June 7, 2018, was a final hearing or a hearing on a further modification of the temporary orders. Because of the confusion over the hearing, Brandon contends that he was denied fundamental fairness and justice regarding the best interests of the child because he was unable to call additional witnesses on his behalf or seek a continuance.

14

As noted earlier, this Court has the authority to suspend enforcement of the judgment even where the trial court declines to do so. *See* TEX. FAM. CODE ANN. § 109.002(c). Before this Court can do so, however, Brandon must make a "proper showing." Appellate courts have found a "proper showing" to include avoidance of disrupting the current living arrangements for a child pending appeal or potential danger to a child such as allowing international travel. *See Marquez v. Marquez*, No. 08-12-00129-CV, 2012 WL 1555204 (Tex. App.—El Paso May 2, 2012) (mem. op.) (per curiam) (staying divorce decree that increased father's limited unsupervised visitation to extended standard possession); *Wiese v. AlBakry*, No. 03-14-00799-CV, 2015 WL 1315890 (Tex. App.—Austin Mar. 20, 2015, order) (per curiam) (staying order in suit to modify parent-child relationship lifting restriction on international travel); *In re R.H.M.*, No. 03-14-00603-CV, 2014 WL 4966543 (Tex. App.—Austin Oct. 3, 2014, order) (per curiam) (staying order giving the appellee the exclusive right to designate the child's primary residence).

Here, Brandon has not presented the Court with any circumstances to support suspending enforcement of the judgment pending appeal. An error in calculating child support or confusion regarding a hearing resulting in missing witnesses to testify on a party's behalf lack a "proper showing" of danger to the child or disruption as to a child's living arrangements. Nor does Brandon show that the trial court's custody decision was based on an impermissible issue or directly resulted in a disruption of the child's living arrangements. Further, the record does not show that Brandon requested a hearing on his motion to make a "proper showing." Therefore, the trial court did not abuse its discretion in denying Brandon's motion to suspend judgment and we will not do so. Accordingly, we overrule Brandon's fifth issue.

<u>**DISPOSITION**</u>

We conclude that the trial court abused its discretion in ordering Brandon to pay monthly child support in two different amounts, and *reverse* the trial court's order requiring Brandon to pay monthly child support in the amount of either $793.89 or $820.98. We *remand* that portion of the trial court's final order in suit affecting the parent child relationship for further proceedings consistent with this opinion. Having overruled Brandon's first, third, fourth, and fifth issues, we *affirm* the judgment of the trial court in all other respects.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 27, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

16



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### SEPTEMBER 27, 2019

### NO. 12-18-00281-CV

### IN THE INTEREST OF B.L.W., A CHILD

Appeal from the County Court at Law
of Houston County, Texas (Tr.Ct.No. 17CCL-131)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the trial court's order requiring **BRANDON LYNN WALKER** to pay monthly child support in the amount of either $793.89 or $820.98 be **reversed** and that portion of the trial court's final order in suit affecting the parent child relationship in this cause be **remanded** to the trial court **for further proceedings** consistent with this opinion; the judgment of the trial court is **affirmed** in all other respects; and that all costs of this appeal are hereby adjudged against the Appellant, **BRANDON LYNN WALKER**, in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*